1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GRANT NAPEAR,                              No.  2:21-cv-01956-DAD-DB

12                  Plaintiff,

13        v.                                    ORDER GRANTING DEFENDANT'S
                                                MOTION TO DISMISS
14   BONNEVILLE INTERNATIONAL
     CORPORATION,                               (Doc. No. 13)
15
                   Defendant.
16

17

18          This matter is before the court on a motion to dismiss pursuant to Federal Rule of Civil

19   Procedure 12(b)(6) filed on behalf of defendant Bonneville International Corporation.  (Doc. No.

20   13.)  The pending motion was taken under submission by the previously assigned district judge

21   on August 15, 2022.[1]  (Doc. No. 35.)  For the reasons explained below, defendant's motion to

22   dismiss plaintiff's first amended complaint will be granted, with leave to amend.

23                                     **BACKGROUND**

24          On October 21, 2021, plaintiff Grant Napear filed this employment discrimination and

25   retaliation lawsuit against defendant Bonneville International Corporation contending that he was

26   terminated due to his religion, race, gender, and political views.  (Doc. No. 1.)  On December 2,

27   _____

28   [1]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 36.)

2021, plaintiff filed his operative first amended complaint ("FAC") against defendant.  (Doc. No. 12.)  Plaintiff alleges as follows in his FAC.

For over 25 years, plaintiff was an on-air talk show host for a popular sports radio talk show—the Grant Napear Show With Doug Christie—that aired regionally throughout Sacramento from 4:00 p.m. to 7:00 p.m. on weekdays.  (Doc. No. 12 at ¶¶ 11, 13, 17.)  In this position, plaintiff's employer was KHTK until defendant purchased KHTK in 2018.  (*Id.* at ¶¶ 14, 16.)  In 2019, defendant renewed plaintiff's employment contract for the 26th consecutive year as the host of the Grant Napear Show With Doug Christie for a one-year term from August 1, 2019 through July 31, 2020.  (*Id.* at ¶¶ 17, 23.)  In addition to his position as a radio talk show host, plaintiff was separately employed by the Sacramento Kings, a professional basketball team, as the television play-by-play announcer for all televised games played by the Sacramento Kings dating back to 1988.[2]  (*Id.* at ¶¶ 9–11.)

In addition to having a career in sports commentary, plaintiff is a lifelong and devout member of the Unitarian Universalist Church and embraces the seven principles espoused by the church including, among others, "[t]he inherent worth and dignity of every person."  (*Id.* at ¶ 6.)  However, plaintiff also believed that religion and politics were inappropriate on-air material during a sports broadcast and therefore "always kept his religious and political beliefs to himself," even though his employment contract did not require him to do so.  (*Id.* at ¶ 27.)

On the evening of May 31, 2020, plaintiff was at his home watching regional and national news broadcasts that were televising events involving protests over the death of George Floyd in Minnesota.  (*Id.* at ¶ 29.)  At approximately 8:30 p.m., DeMarcus Cousins, a former Sacramento Kings player, posted a tweet on his Twitter account that was directed at plaintiff and asking plaintiff for his opinion:  "What's your take on [Black Lives Matter]?"  (*Id.* at ¶¶ 30, 31.)  Plaintiff responded to Mr. Cousins' tweet with a tweet of his own:  "Hey!!!  How are you?

---

[2]  Although not alleged in the FAC, defendant clarified in its pending motion that plaintiff was an employee of defendant in connection with his position as a talk show host and was employed by the Sacramento Kings in connection with his position as a play-by-play television announcer. (Doc. No. 13 at 8 n.1.)  However, plaintiff brought this action only against defendant Bonneville International Corporation; the Sacramento Kings are not a party to this action.

1   Thought you forgot about me.  Haven't heard from you in years.  ALL LIVES

2   MATTER…EVERY SINGLE ONE."  (*Id.* at ¶ 32.)  Plaintiff maintains that his statement that

3   "ALL LIVES MATTER…EVERY SINGLE ONE" was an expression of his sincerely held

4   religious beliefs as a member of the Unitarian Church, his "opinion with regards to the sanctity of

5   all lives."  (*Id.* at ¶¶ 33, 40, 56.)  Plaintiff also maintains that the statement "all lives matter" is

6   "entirely non-racist, factually true and inherently inoffensive."  (*Id.* at ¶ 40.)

7         The following day, on June 1, 2020, defendant's representative, Steve Cottingim,

8   informed plaintiff that he was suspended from his radio show.  (*Id.* at ¶ 34.)  The day after that,

9   on June 2, 2020, defendant informed plaintiff that he was being terminated for cause as defined in

10  his employment contract, specifically, pursuant to paragraph 6(c)(vii), which states that "the term

11  'Cause' shall be defined as any of the following conduct by Employee, as determined by the

12  Company in its reasonable discretion: . . . Any act of material dishonesty, misconduct, or other

13  conduct that might discredit the goodwill, good name, or reputation of the Company."  (*Id.* at ¶

14  37.)  Following plaintiff's termination, defendant published the following statement on social

15  media:

16          We were saddened by the comments Grant Napear recently made
             on Twitter.  While we appreciate Grant's positive contributions to
17           KHTK over the years, his recent comments about the Black Lives
             Matter movement do not reflect the views or values of Bonneville
18           International Corporation.   The timing of Grant's tweet was
             particularly insensitive.  After reviewing the matter carefully, we
19           have made the difficult decision to part ways with Grant.

20          Bonneville's purpose is to build up, connect, inform and celebrate
             communities and families.  In the wake of George Floyd's tragic
21           death and the events of the last several days, it is crucial that we
             communicate the tremendous respect that we have for the black
22           community and any other groups or individuals who have cause to
             feel marginalized.  Bonneville remains committed to fostering calm
23           and promoting human dignity in the face of unrest.  We plead to all
             to work together for peace and mutual respect.
24

25  (*Id.* at ¶ 39.)  Plaintiff further alleges that after he was terminated, defendant informed him that

26  the termination was not only based on the May 31, 2020 tweet.  (*Id.* at ¶ 41.)  Rather, defendant

27  had decided to terminate plaintiff's employment only after the Sacramento Kings held a team

28  meeting regarding plaintiff's continued employment and the players and executives within the

Sacramento Kings organization voted to end its relationship with plaintiff, which defendant contended amounted to an "act of misconduct" that "discredited" the "goodwill, good name, or reputation" of defendant.  (*Id.*)  Plaintiff maintains that this explanation by defendant —that the Kings basketball team's reaction was the impetus for plaintiff's termination pursuant to his employment agreement—is a "complete fiction."  (*Id.* at ¶¶ 41, 42.)

Moreover, plaintiff alleges that neither defendant nor any members of its management were offended by or objected to plaintiff's May 31, 2020 tweet.  (*Id.* at ¶ 43.)  As plaintiff alleges, defendant is a wholly owned subsidiary of the Church of Jesus Christ of Latter-Day Saints, i.e., the Mormon Church, and is essentially its "media arm," and that, like the Mormon Church, defendant "does not now and never has supported, endorsed, adopted or agreed with the beliefs, ideas or doctrine of the Black Lives Matter movement."  (*Id.* at ¶¶ 43, 45.)  In fact, the Mormon Church has embraced a message tantamount to "All Lives Matter."  (*Id.* at ¶ 47.)  Plaintiff also alleges that the phrase "All Lives Matter" is not offensive "to any particular group or to Black people."  (*Id.* at ¶¶ 48–50.)

At the same time, in his FAC plaintiff alleges, somewhat contradictorily, that he was terminated for expressing his personal political opinion in violation of defendant's "*ad hoc* (and unpublished) policy supporting the Black Lives Matter movement."  (*Id.* at ¶¶ 56, 59.)  Plaintiff also alleges that he was terminated because he had publicly expressed his religious views via his May 31, 2020 tweet and due to his race, gender, and "personal political opinion."  (*Id.* at ¶¶ 56, 59.)  Plaintiff maintains that defendant's "decision to falsely accuse [plaintiff] of racist misconduct and publicly terminate his employment . . . has completely and permanently damaged [his] 26-year Emmy award winning career as a sports broadcaster . . . [and] has had serious negative effects on Plaintiff's personal life and his public reputation."  (*Id.* at ¶ 60.)

Based on these allegations in the FAC, plaintiff asserts the following six claims:  (1) wrongful termination in violation of public policy; (2) discrimination on the basis of religion in violation of the California Fair Employment and Housing Act, California Government Code § 12940, *et seq.* ("FEHA"); (3) racial discrimination in violation of FEHA; (4) discrimination on the basis of gender in violation of FEHA; (5) retaliation in violation of California Labor Code §§

4

1   1101 and 1102; and (6) retaliation in violation of California Labor Code § 98.6.  (*Id.* at ¶¶ 61–96.)

2          On December 23, 2021, defendant filed its pending motion seeking dismissal of plaintiff's

3   FAC in its entirety.  (Doc. No. 13.)  On January 28, 2022, plaintiff filed his opposition to

4   defendant's motion to dismiss.  (Doc. No. 19.)  On February 4, 2022, defendant filed his reply

5   thereto.  (Doc. No. 22.)

6                                           **LEGAL STANDARD**

7          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

8   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

9   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

10  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

11  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

12  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

13  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

15  *Iqbal*, 556 U.S. 662, 678 (2009).

16         In determining whether a complaint states a claim on which relief may be granted, the

17  court accepts as true the allegations in the complaint and construes the allegations in the light

18  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

19  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

20  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

21  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

22  unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

23  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

24  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

25  of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

26  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

27  defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen.*

28  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

Before addressing the merits of the pending motion to dismiss, the court will first address defendant's request for judicial notice made in support of its pending motion.  (Doc. Nos. 14, 15, 16, 17.)  The court will then turn to the parties' arguments regarding whether plaintiff has sufficiently stated his FEHA, retaliation, and wrongful termination claims.

**A.      Request for Judicial Notice**

Defendant requests that the court take judicial notice of two exhibits attached to a declaration of its counsel, Tanner Camp, and one exhibit attached to a declaration of Krystal On, an employee of DigiStream Investigations, a company that provides investigative services.  (Doc. Nos. 14, 16, 17.)  Plaintiff filed a response to defendant's request for judicial notice, and defendant filed a reply to plaintiff's response.  (Doc. Nos. 20, 23).  Defendant has also filed a declaration of Steve Cottingim, defendant's Senior Vice President and Market Manager, in support of its pending motion, to which two exhibits are attached.  (Doc. No. 15.)  Although defendant does not request judicial notice of the two exhibits attached to Mr. Cottingim's declaration, defendant does contend that those two exhibits have been incorporated by reference into plaintiff's FAC.  (Doc. No. 13 at 10 n.2.)

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citation omitted).  However, courts recognize two exceptions to this rule: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

As to the first exception, the Ninth Circuit has explained that:  "incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself.  The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Id.* at 1002.  Even if not directly attached to a complaint, a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903,

908 (9th Cir. 2003).  That said, a complaint's "mere mention of the existence of a document is insufficient to incorporate the contents of a document."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint.  Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").  Whether the district court incorporates a document by reference is a matter of discretion.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) ("[T]he district court may, but is not required to incorporate documents by reference.").

As to the second exception, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.  For this reason, courts should not take judicial notice of a fact contained within a document if that fact "is subject to varying interpretations, and there is reasonable dispute as to what [the document] establishes."  *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

The court will first address the two exhibits attached to Mr. Cottingim's declaration that defendant seeks to have deemed incorporated by reference into plaintiff's FAC:  (i) plaintiff's employment agreement with defendant for the term August 1, 2019 through July 31, 2020, and (ii) a letter purporting to terminate plaintiff's employment with defendant dated June 2, 2020.  (Doc. No. 15.)  Plaintiff does not appear to object to the incorporation by reference of plaintiff's employment agreement into the FAC.  (Doc. No. 20 at 2.)  Indeed, in his FAC plaintiff mentions the existence of the August 1, 2019 employment agreement several times, refers to the contents of its terms, and even quotes from the agreement, specifically, with respect to a provision regarding

termination of employment for cause. (Doc. No. 12 at ¶¶ 17–19, 21, 23, 37.) Because the contents of the employment agreement are part of the allegations of the FAC, its authenticity is not in question, and there is no dispute as to the document's relevance, the court will consider the employment agreement as incorporated into the FAC. *See Coto Settlement*, 593 F.3d at 1038. However, the court declines to incorporate by reference into the FAC the termination letter dated June 2, 2020, which, contrary to defendant's contentions, is not referenced anywhere in the FAC, either directly or by implication. The allegations in the FAC that plaintiff was terminated the day that the termination letter was dated is an insufficient basis to incorporate it by reference because it is not alleged to be the means by which plaintiff was notified of his termination. *See Khoja*, 899 F.3d at 1007 (finding that "references" to certain facts in the complaint that were also contained in a press release was insufficient to incorporate the press release by reference because the "facts alleged could have come from other sources").

The court next addresses the three exhibits that defendant seeks to be judicially noticed. The two exhibits attached to attorney Camp's declaration are news articles dated May 31, 2020 "regarding the death of George Floyd and ensuing protests around the country," (Doc. No. 17 at 20), titled *Grief, Outrage Over George Floyd Spread Further* published by National Public Radio and *Saturday at Capitol: Bottles thrown, cops hit protestors with batons at freeway in Sacramento* published by the Sacramento Bee. (Doc. Nos. 14-1, 14-2.) In addition, the exhibit attached to Ms. On's declaration is a compilation of all "the comments to and retweets of" the May 31, 2020 tweet published by plaintiff. (Doc. No. 16.) Defendant maintains that the information contained in the news articles "was widely-known (in Sacramento and elsewhere) and is not subject to reasonable dispute" and that the compilation of comments and retweets to plaintiff's May 31, 2020 tweet was gathered from a "publicly-available website … [and] [t]he parties cannot reasonably question the existence of these tweets." (Doc. No. 17 at 2–3.)

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of "various newspapers, magazines, and books . . .solely as an indication of what

1   information was in the public realm at the time") (quoting *Benak ex rel. All. Premier Growth*

2   *Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).  Similarly, courts have

3   taken judicial notice of tweets because "the existence of the publicly-available articles and tweets

4   cannot reasonably be questioned."  *Unsworth v. Musk*, No. 19-mc-80224-JSC, 2019 WL

5   5550060, at *4 (N.D. Cal. Oct. 28, 2019); *see also Nat'l Rifle Ass'n of Am. v. City of Los Angeles*,

6   441 F. Supp. 3d 915, 933–34 n.6 (C.D. Cal. 2019) ("The Court therefore takes judicial notice of

7   O'Farrell's statements via his verified Twitter account.") (citation omitted).  Accordingly, the

8   court takes judicial notice of the two news articles and compilation of tweets in response to

9   plaintiff's May 31, 2020 tweet "solely as an indication of what information was in the public

10  realm at the time" and not as to whether the contents of those articles or tweets are in fact true.

11  *Von Saher*, 592 F.3d at 960.

12  **B.    Religious, Race, and Gender Discrimination under FEHA (Claims 2–4)**

13       Defendant moves to dismiss plaintiff's FEHA claims for discrimination on the basis of

14  religion, race, and gender.  (Doc. No. 13 at 12–15.)

15       Under the FEHA, it is unlawful for an employer "to discriminate against [a] person in

16  compensation or in terms, conditions, or privileges of employment" because of a person's

17  religious creed, race, or gender.  Cal. Gov't. Code § 12940(a).  To state a prima facie case of

18  discrimination under the FEHA, a plaintiff must allege and ultimately show that:  (i) he was a

19  member of a protected class; (ii) he was qualified for the position he sought or was performing

20  competently in the position he held; (iii) he suffered an adverse employment action, such as a

21  termination; and (iv) some other circumstances that suggest a discriminatory motive.  *See Lawler*

22  *v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013); *Guz v. Bechtel Nat'l, Inc.*, 24

23  Cal. 4th 317, 355 (2000); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009).  As to

24  the fourth element, plaintiff can demonstrate an employer's discriminatory motive through direct

25  evidence, or by offering "circumstantial evidence of discrimination that tends to show that the

26  employer's proffered motives were not the actual motives because they are inconsistent or

27  otherwise not believable."  *Achal v. Gate Gourmet*, 114 F. Supp. 3d 781, 801 (N.D. Cal. July 14,

28  2015) ("Applying California law, the Ninth Circuit has held that a mere comment suggesting the

existence of bias can be direct evidence of discriminatory animus."); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998).  At the pleadings stage, a plaintiff must allege some facts supporting the inference that his termination was because of his religion, race, or gender.  *See Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th Cir. Feb. 2, 2022); *Broadnax v. Adams & Assocs., Inc.*, 817 F. Appx. 512, 513 (9th Cir. 2020);[3] *see also Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1079 (E.D. Cal. 2013) (granting a motion to dismiss plaintiff's discrimination claim because the complaint lacked "meaningful detail suggesting the termination was because of [plaintiff's protected class]").

Here, the alleged circumstances surrounding plaintiff's termination do not give rise to an inference of religious, race, or gender discrimination.  According to plaintiff, the public statement defendant issued following his termination—that plaintiff's "recent comments about the Black Lives Matter movement do not reflect the views or values of [defendant]"—gives rise to an inference that plaintiff was terminated because of his religious beliefs as a member of the Unitarian Universalist Church, including his belief of "the inherent worth and dignity of every person."  (Doc. Nos. 12 at ¶ 6–7, 39, 56; 19 at 7.)  However, as defendant points out, notably absent from the FAC are any allegations of fact indicating that defendant had any reason to know that plaintiff even was a member of the Unitarian Church or that his May 31, 2020 tweet was somehow an expression of a religious belief on his part.  *Cf. Achal*, 114 F. Supp. 3d at 801 (finding that the plaintiff stated a plausible religious discrimination claim, in part, because the complaint included allegations from plaintiff's supervisor said that it was "ridiculous for a religious ceremony to take so long" when commenting on plaintiff's absence from work and as a result the court could "infer that [the employer] was aware of [plaintiff's] Hindu faith"); *Viloria v. Adams & Assocs., Inc.*, No. 2:16-cv-00314-TLN-KJN, 2017 WL 4422363, at *4 (E.D. Cal. Oct. 5, 2017) (finding that the plaintiff had stated a plausible religious discrimination claim because the complaint alleged that plaintiff "informed Defendant she was religious and that she used her breaks to pray" when plaintiff was purportedly terminated for sleeping on the job).  To the

---

[3]  Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    contrary, plaintiff alleges in his FAC that he "always kept his religious and political beliefs to

2    himself" and that he "believed that discussing religion or politics during a sports broadcast was

3    inappropriate on-air material," thus at least suggesting that defendant was unaware of plaintiff's

4    religious beliefs.  (Doc. No. 12 at ¶ 27.)  Plaintiff also does not contend that his tweet was self-

5    evidently religious in nature, nor are there any other facts alleged in the FAC, such as comments

6    regarding plaintiff's religion made by defendant or that plaintiff was replaced by someone of a

7    different religious creed, from which an inference could be drawn that defendant terminated

8    plaintiff because his religious beliefs.  *See Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d

9    1086, 1099 (E.D. Cal. 2017) (granting a motion to dismiss where there were no facts alleged

10   "indicating that defendant's decision to place [the plaintiff] on leave was because of her age," and

11   plaintiff failed to allege that she was "replaced by a younger employee, that she overheard any

12   negative comments about her age, or that age was ever a point of discussion at any time during

13   her communications with defendant about an accommodation for her back problems"); *Ali v.*

14   *Silicon Valley Bank*, No. 18-cv-03999-JSW, 2019 WL 8752054, at *2 (N.D. Cal. Jan. 28, 2019)

15   (dismissing a religious discrimination claim where the plaintiff's allegations that his interviewer

16   "identified himself regarding his 'tendency toward his Christian values'" during the job interview

17   did "not necessarily imply that the decision not to hire Plaintiff was as a result of his race,

18   national origin, or religion"), *aff'd*, 797 F. Appx. 318 (9th Cir. 2020).

19          In his opposition to the pending motion, plaintiff maintains that his FAC contains

20   sufficient allegations indicating that the proffered reason for his termination was pretextual.

21   (Doc. No. 19 at 8.)  Specifically, plaintiff notes that he alleges in the FAC that:  "no one at

22   [defendant] actually was offended or objected to [plaintiff's] tweet"; defendant "does not now,

23   and never has, supported the 'Black Lives Matter movement' because [defendant] is a wholly

24   owned subsidiary of the Church of Jesus Christ of Latter-Day Saints"; "every executive and/or

25   member of management of [defendant] is a member of the Mormon Church"; and "the Mormon

26   Church never has supported, endorsed or approved of the Black Lives Matter movement."  (Doc.

27   No. 12 at ¶¶ 43–45.)  Plaintiff argues that his allegations in this regard directly contradict

28   defendant's purported reasons for terminating him, i.e., that plaintiff's tweet "do not reflect the

11

views or values of [defendant]" or that an alleged "vote" by the Sacramento Kings organization to ends its employment relationship with plaintiff constituted an act of misconduct under plaintiff's employment agreement with defendant (Doc. No. 12 at ¶¶ 39, 41–42), thereby suggesting that "the proffered reason was insufficient to motivate discharge." (Doc. No. 19 at 8–9) (citing *Soria v. Univision Radio L.A., Inc.*, 5 Cal. App. 5th 570, 594 (2016)). However, even if these allegations by plaintiff were sufficient to indicate that defendant's proffered reasons were pretextual, the allegations still do not plausibly allege a discriminatory motive because plaintiff has not alleged a plausible connection between plaintiff's religious beliefs and his termination. *See Bess v. Adams & Assocs., Inc.*, No. 2:17-cv-00173-TLN-KJN, 2018 WL 4801951, at *4 (E.D. Cal. Oct. 3, 2018) (finding the plaintiff's allegations "sufficient" at the pleadings stage "to infer pretext" but "not sufficient for the Court to infer a discriminatory motive" because there was no "link to [plaintiff's] protected characteristics"). Indeed, "simply showing the employer was lying, without some evidence of discriminatory motive, is not enough to infer discriminatory animus." *Soria*, 5 Cal. App. 5th at 594; *see also Guz*, 24 Cal. 4th at 360–61 ("[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination."). At bottom, plaintiff has not alleged facts sufficient to support the inference that his termination was because of his religion as opposed to an obvious alternative explanation, such as that the substance and timing of plaintiff's May 31, 2020 tweet were "particularly insensitive," or did "not reflect the views or values of [defendant]," or constitute "cause" for termination under the terms of plaintiff's employment agreement. (Doc. No. 12 at ¶¶ 37, 39); *see Whitehead*, 2022 WL 313844, at *2 (upholding the dismissal of a complaint where the plaintiff "had not pleaded facts to support the inference that her termination was because of her [protected class] as opposed to her unwillingness to return to work because of a dispute with a colleague"); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior.").

/////

12

1   Finally, as to his race and gender discrimination claims, plaintiff maintains that "[m]any

2   of the same facts also provide the basis for the reasonable inference that [defendant's] termination

3   decision was based on Plaintiff's race." (Doc. No. 19 at 8–9.)  In addition, plaintiff argues that

4   because the statement published by defendant following plaintiff's termination stated that

5   defendant has "tremendous respect" for "the black community" and included reference to the

6   "Black Lives Matter movement," these allegations plausibly give rise to an inference of a

7   discriminatory motive because plaintiff is a Caucasian male who is not a member of the black

8   community or the Black Lives Matter movement.  (Doc. No. 19 at 9.)

9   The court finds plaintiff's argument in this regard unavailing.  To begin with, plaintiff

10   makes no argument in support of his gender discrimination claim in his opposition to the pending

11   motion, nor are there any facts alleged in the FAC that even hint at discrimination on the basis

12   gender, aside from legal conclusions or recitations of the elements of such a claim, which are

13   clearly insufficient to state a cognizable gender discrimination claim.  (Doc. No. 12 at ¶¶ 59, 75,

14   81); *Iqbal*, 556 U.S. at 676.  Next, as to race discrimination, defendant's reference to the "Black

15   Lives Matter movement" and respect for "the black community" in its public statement do not

16   give rise to a plausible inference that defendant terminated plaintiff merely because he is a

17   "Caucasian male."  Moreover, as defendant points out, plaintiff's position as to this claim is

18   illogical because "an expression of respect for one community says nothing about the respect (or

19   lack thereof) for another." (Doc. No. 22 at 7–8.)  Even taking plaintiff's allegations as true and

20   viewing them in the light most favorable, as the court must do at the pleading stage, it would be

21   unreasonable to infer that the foregoing allegations indicate discriminatory motive because

22   plaintiff has not alleged: 1) any facts connecting his race or gender to defendant's decision  to

23   terminate him; 2) that plaintiff was replaced by a non-Caucasian female, or 3) that defendant

24   made any comments or took any actions suggesting that race or gender played any role in its

25   termination decision.  *See Bess v. Adams & Assocs., Inc.*, No. 2:17-cv-00173-TLN-KJN, 2017

26   WL 6017015, at *4 (E.D. Cal. Dec. 5, 2017) (granting a motion to dismiss plaintiff's race and age

27   discrimination claims where plaintiff had not "alleged any facts connecting his age or race to

28   Defendant's decision" nor "alleged [that] Defendant treated differently other employees who

13

were different ages or races than Plaintiff"); *see also Cooper v. Templeton*, No. 21-cv-04692-RA, 2022 WL 4367445, at *3–5 (S.D.N.Y. Sept. 21, 2022) (finding that the plaintiff, who was terminated from her employment the day after a video of her calling the police on an African American birdwatcher in New York City's Central Park went viral, failed to state a claim for race or sex discrimination because she failed to allege facts supporting an inference of discriminatory motive by her employer).

Accordingly, because plaintiff has failed to allege facts that plausibly suggest any inference of discriminatory motive by defendant when it terminated him, the court will grant defendant's motion to dismiss plaintiff's religious, race, and gender discrimination claims. Plaintiff will be granted leave to amend his discrimination claims. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (noting that "[r]ule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality'") (citation omitted). However, plaintiff is advised that if he chooses to amend his discrimination claims, he must do so in good faith and consistent with the dictates of Federal Rule of Civil Procedure 11.

## C.    California Labor Code §§ 1101, 1102 and § 98.6 (Claim 5–6)

Next, defendant moves to dismiss plaintiff's retaliation claims brought under California Labor Code §§ 1101, 1102, and 98.6.  (Doc. No. 13 at 15–19.)

In 1937, "the California Legislature, recognizing that employers could misuse their economic power to interfere with the political activities of their employees, enacted Labor Code sections 1101 and 1102 to protect the employees' rights."  *Gay L. Students Ass'n. v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458, 486–87 (1979) *superseded by statute as stated in In re Marriage Cases*, 43 Cal. 4th 757, 835 n.56 (2008).  California Labor Code § 1101 provides that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy:  (a) Forbidding or preventing employees from engaging or participating in politics . . . [or] (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees."  Cal. Lab. Code § 1101.  Similarly, § 1102 provides that "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line

14

of political action or political activity." Cal. Lab. Code § 1102.  "These sections serve to protect 'the fundamental right of employees in general to engage in political activity without interference by employers.'" *Gay L. Students Ass'n*, 24 Cal. 3d at 487 (citation omitted); *see also Couch v. Morgan Stanley & Co.*, No. 1:14-cv-00010-LJO-JLT, 2015 WL 4716297, at *11 (E.D. Cal. Aug. 7, 2015) ("Sections 1101 and 1102 therefore 'prohibit an employer from attempting to coerce or influence its employees' political activities through the threat of discharge . . . [and] [t]he purpose of sections 1101 and 1102 [] is 'to protect employees' political freedom.'") (quoting *Nava v. Safeway Inc.*, No. F063775, 2013 WL 3961328, at *8 (Cal. Ct. App. July 31, 2013) (unpublished) and *Wade v. Rackauckas*, No. G034650, 2006 WL 1086259, at *4 (Cal. Ct. App. Apr. 26, 2006) (unpublished)), *aff'd*, 656 F. Appx. 841 (9th Cir. 2016).[4]  Employees can assert a private action against their employers under §§ 1101 and 1102.  *See* Cal. Lab. Code § 1005; *Lockheed Aircraft Corp. v. Superior Ct. of Los Angeles Cnty.*, 28 Cal. 2d 481, 486 (1946).

Importantly, "liability under §§ 1101(a) and 1102 is triggered only if an employer fires an employee based on a political motive." *Couch*, 656 F. Appx. at 843.  In addition, employers are prohibited from terminating, discriminating, or retaliating against an employee who engaged in political activity protected under §§ 1101 and 1102.  *See* Cal. Lab. Code § 98.6(a).  For purposes of §§ 1101 and 1102, the California Supreme Court has defined "political activity" "as extending beyond 'partisan activity' to include 'the espousal of a candidate *or a cause*, and some degree of

---

[4] The Ninth Circuit has stated that federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (citing *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997)); *see also Couch*, 2015 WL 4716297, at *11 ("Given the dearth of relevant published decisions concerning sections 1101 and 1102, the Court must resort to unpublished ones.").  Indeed, the Ninth Circuit has itself cited the unpublished decision in *Nava*. *See Couch v. Morgan Stanley & Co. Inc.*, 656 F. Appx. 841, 842–43 (9th Cir. 2016) (citing *Nava*, 2006 WL 1086259, at *4).  In the past, the undersigned has adopted the view that because California specifically prohibit citation to such opinions "by a court or a party in any other action" absent two exceptions not applicable here (see California Rule of Court 8.1115(a)–(b)), federal courts should not do so either.  Having now become aware of the Ninth Circuit's position that unpublished/noncitable California appellate court opinions may be considered and cited by federal courts, the undersigned will do so while keeping firmly in mind that such decisions have no precedential value and may merely lend some support to a position regarding the status of California law.  *Emp'rs Ins. of Wausau*, 330 F.3d at 1220 n.8.

1    action to promote the acceptance thereof by other persons.'" *Ross v. Indep. Living Res. of Contra*

2    *Costa Cnty.*, No. 08-cv-00854-TEH, 2010 WL 2898773, at *9 (N.D. Cal. July 21, 2010) (quoting

3    *Gay L. Students Assn.*, 24 Cal. 3d at 487).

4            In its pending motion to dismiss, defendant argues that plaintiff's claim brought under §§

5    1101 and 1102 is insufficiently alleged because plaintiff does not identify a "rule, regulation, or

6    policy" within the meaning of § 1101, which defendant contends is a required element of such a

7    claim.  (Doc. No. 13 at 16.)  The few courts that have addressed this purported requirement at the

8    pleadings stage have not thoroughly analyzed the issue but rather have either accepted the

9    argument or rejected it without much, if any, analysis.  *Compare Ross v. Indep. Living Res. of*

10   *Contra Costa Cnty.*, No. 08-cv-00854-TEH, 2010 WL 1266497, at *6 (N.D. Cal. Apr. 1, 2010)

11   (rejecting the defendant's argument that plaintiff had "failed to identify a 'rule, regulation, or

12   policy' that limited [plaintiff's] political activities" and explaining that it was "unnecessary" at

13   the pleadings stage for plaintiff to do so because "[t]he allegation that [plaintiff] was terminated

14   as a result of his political activity is sufficient to plausibly suggest the existence of such a

15   policy"); *Snyder v. Alight Sols., LLC*, No. 21-cv-00187-CJC-KES, 2021 WL 4622392, at *3 (C.D.

16   Cal. May 5, 2021) (finding that the plaintiff had adequately alleged a violation of §§ 1101 and

17   1102 where the plaintiff alleged that she was terminated for political reasons after visiting the

18   Capitol on January 6 without reference to any particular "rule, regulation, or policy") *with*

19   *Brahmana v. Lembo*, No. 09-cv-00106-RMW, 2010 WL 965296, at *5 (N.D. Cal. Mar. 17, 2010)

20   (dismissing the plaintiff's claims brought under §§ 1101 and 1102, in part, due to plaintiff's

21   failure to "allege the existence of any rule, regulation, or policy forbidding CyberData employees

22   from participating in politics or controlling their political activities" or to allege that "plaintiff

23   was coerced by threat of discharge to adopt or refrain from adopting any course of political

24   activity"); *Prem v. Access Servs., Inc.*, No. 11-cv-01358-ODW-JEM, 2011 WL 3516170, at *5

25   (C.D. Cal. Aug. 10, 2011) (granting a motion to dismiss the plaintiff's claims under §§ 1101 and

26   1102, in part, because the plaintiff had failed to allege the existence of a "rule, regulation, or

27   policy") (citing *Brahmana*, 2010 WL 965296, at *5).

28   /////

16

Here, however, plaintiff actually does allege in his FAC that he was terminated for violating "the Company's *ad hoc* (and unpublished) policy supporting the Black Lives Matter movement." (Doc. No. 12 at ¶ 59.) But confusingly, plaintiff appears to contradict this very allegation by also alleging that defendant "does not now and never has supported, endorsed, adopted or agreed with the beliefs, ideas or doctrine of the Black Lives Matter movement." (*Id.* at ¶ 45.) The court will not attempt to parse a distinction between these two contradictory allegations or speculate as to which of them plaintiff would prefer the court to accept as true. This is because the court generally need not accept as true "unwarranted deductions of fact, or unreasonable inferences," and in this case the court will therefore disregard plaintiff's contradictory allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, despite defendant having identified the contradiction in the pending motion, plaintiff failed to address the contradictory allegations of the FAC or provide any clarification regarding them in the brief in opposition to the pending motion. (Doc. No. 13 at 17 n.5.) Plaintiff also does not allege any facts that defendant was coercing or influencing its employees "to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity" through the "threat of discharge or loss of employment."[5] Cal. Lab.

---

[5] The court declines to decide whether a plaintiff must always identify a particular policy, rule, or regulation when stating a claim under § 1101 but does conclude that plaintiff's contradictory allegations in this case fail to state a plausible claim. Plaintiff's termination may be viewed as a warning or threat to other employees that certain political activities or viewpoints would not be tolerated by defendant, and plaintiff's termination may be considered a declaration of a particular policy regarding the Black Lives Matter movement by defendant. *See Surdak v. DXC Tech.*, No. 5:22-cv-00921-SB-KK, 2022 WL 18142545, at *7 (C.D. Cal. Dec. 20, 2022) (finding that "a reasonable jury could conclude that [the employer] disagreed with the political views expressed in or suggested by the tweet [concerning Lyndon Baines Johnson] and wanted to punish Plaintiff for, or discourage other employees from, expressing similar speech"); *Nava*, 2013 WL 3961328, at *8 (explaining that if plaintiff alleged that he "was fired for his particular political perspective . . . [of] being against same-sex marriage . . . it may be inferred that . . . [the employer] was in effect declaring that the espousal or advocacy of such political views will not be tolerated—then [the employer's] action constituted a violation of Labor Code sections 1101 and 1102"); *see also Lockheed Aircraft Corp.*, 28 Cal. 2d at 485–86 (defining "policy" as used in § 1101 as "[a] settled or definite course or method adopted and followed by a government, institution, body, or individual"). But, in light of the conflicting allegations in the FAC and its dearth of factual allegations to support this claim, the court concludes plaintiff has failed to allege any facts in his FAC that would give rise to such reasonable inferences in this case.

1    Code § 1102.

2          Defendant also argues that plaintiff failed to allege facts sufficient to show that defendant

3    fired him because of his political views.[6]  (Doc. No. 13 at 17–19.)  Specifically, defendant argues

4    that plaintiff was terminated for an apolitical business decision pursuant to paragraph 6(c)(vii) of

5    its employment agreement plaintiff—i.e., that plaintiff's tweet "might discredit" the goodwill of

6    defendant given its subject matter and timing.  (Doc. No. 13 at 17–18.)  In contrast, plaintiff

7    maintains that the allegations in the FAC support an inference that his termination was politically

8    motivated.  (Doc. No. 19 at 11.)  Specifically, plaintiff alleges in the FAC that he was terminated

9    because he expressed "his personal political opinion" and that it can be inferred that his

10   termination was politically motivated because defendant's public statement stated that it chose to

11   "part ways" with plaintiff due to his "particularly insensitive" tweet regarding the "Black Lives

12   Matter movement."  (Doc. Nos. 12 at ¶ 39; 19 at 11.)

13          "When faced with two possible explanations, only one of which can be true and only one

14   of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their

15   favored explanation but are also consistent with the alternative explanation."  *Eclectic Props.*, 751

16   F.3d at 996.  Instead, "[s]omething more is needed, such as facts tending to exclude the

17   possibility that the alternative explanation is true, in order to render plaintiffs' allegations

18   plausible."  *Id.* at 996–97.  Here, the allegations of plaintiff's FAC are convoluted and do not tend

19   to exclude one plausible alternative explanation over another.  For example, plaintiff alleges that

20   his May 31, 2020 tweet was not actually offensive, presumably, to suggest that his tweet could

21   not serve to "discredit" the "goodwill, good name, or reputation" of defendant.  (Doc. No. 12 at

22   ¶¶ 37, 48–50.)  On the other hand, plaintiff alleges that, due to defendant's affiliation with the

23

24   ────────────────
     [6]  The parties do not appear to dispute that plaintiff's May 31, 2020 tweet could constitute
25   "political activity" within the meaning of §§ 1101 or 1102.  In this regard, the court notes that the
     tweet might be considered a "political activity" under the statutes because it could be construed as
26   espousing a particular view regarding a cause, i.e., the Black Lives Matter movement.  *See Ross*,
     2010 WL 2898773, at *9; *see also Gay L. Students Assn.*, 24 Cal. 3d at 487–88 (finding that "the
27   struggle of the homosexual community for equal rights, particularly in the field of employment,
     must be recognized as a political activity").  However, the court need not reach this issue because
28   plaintiff's claim brought under §§ 1101 and 1102 will be dismissed with leave to amend.

1   Mormon Church, defendant holds a political view that is anti-Black Lives Matter or pro-All Lives

2   Matter.  (*See id.* ¶¶ 45–47.)  Plaintiff's allegations in this regard simply do not support plaintiff's

3   contention that defendant terminated him due to his expression of a particular (anti-Black Lives

4   Matter) political opinion because plaintiff also alleges that defendant holds that very same

5   political opinion.  In the court's view, the allegations in the FAC regarding this claim are

6   confusing, convoluted, and generally out of step with plaintiff's contention that he was terminated

7   for expressing a *political* opinion, as opposed to for making a public statement that may have

8   been unpopular and detrimental to defendant's "good will, good name, or reputation."  (*Id.* at ¶

9   37.)  Notably, for example, plaintiff does not even directly allege that his May 31, 2020 tweet and

10   its message constituted his personal political opinion.  (*Id.* at ¶¶ 40, 59.)

11         Due to plaintiff's failure to plausibly allege that defendant's decision to terminate him was

12   politically motivated or that it was the expression of a policy or an act of coercion by defendant

13   with respect to defendant's employees' political activities, the court will grant defendant's motion

14   to dismiss plaintiff's claim brought under §§ 1101 and 1102.  In addition, because plaintiff's §§

15   1101 and 1102 claim is insufficiently alleged, his derivative claim brough under § 98.6 predicated

16   on plaintiff having engaged in protected politically activity is also insufficiently alleged.  *See*

17   *Couch*, 2015 WL 4716297, at *17 (granting summary judgment on § 98.6 claim in favor of

18   defendant where the undisputed evidence showed that the employer did not terminate plaintiff

19   due to his engaging in conduct protected under §§ 1101 and 1102).  Although the court will grant

20   defendant's motion to dismiss plaintiff's §§ 1101, 1102, and 98.6 claims, plaintiff will be granted

21   leave to amend to attempt to cure the deficiencies noted above as to those claims.[7]

---

22   [7]  In the FAC, plaintiff also alleges that his § 98.6 claim is predicated on a violation of California

23   Labor Code at ¶¶ 93–94.)  However, that statute is not applicable here.
     Section 96(k) addresses "[c]laims for loss of wages as the result of demotion, suspension, or

24   discharge from employment for lawful conduct occurring during nonworking hours away from
     the employer's premises."  Cal. Lab. Code § 96(k).  California courts have found that the scope of

25   § 96(k) is limited to "'lawful conduct occurring during nonworking hours away from the
     employer's premises' asserting '*recognized constitutional rights*.'"  *Grinzi v. San Diego Hospice*

26   *Corp.*, 120 Cal. App. 4th 72, 86 (2004) (quoting *Barbee v. Household Auto. Fin. Corp.*, 113 Cal.
     App. 4th 525, 533 (2003)).  Thus, to state a § 98.6 claim predicated on a violation of § 96(k),

27   plaintiff must allege that his discharge occurred because he asserted a recognized constitutional

28   right.  *See id.*  Here, plaintiff does not allege that he asserted any constitutional right at all.  (Doc.

1    **D.      Wrongful Termination in Violation of Public Policy (Claim 1)**

2              Finally, defendant seeks to dismiss plaintiff's claim of wrongful termination in violation

3    of public policy because it is derivative of plaintiff's other claims, which defendant contends are

4    all insufficiently pled.  (Doc. No. 13 at 21.)

5              As a matter of California common law, "when an employer's discharge of an employee

6    violates fundamental principles of public policy, the discharged employee may maintain a tort

7    action and recover damages traditionally available in such actions."  *Tameny v. Atl. Richfield Co.*,

8    27 Cal. 3d 167, 170 (1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir.

9    2003).  To prevail on a claim for wrongful discharge, a plaintiff must show that:  (1) an employer-

10   employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of

11   public policy was a motivating factor for the termination; and (4) the termination was the cause of

12   plaintiff's damages.  *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004); *see*

13   *also Wright v. Thrifty Payless, Inc.*, No. 2:13-cv-01681-KJM, 2013 WL 5718937, at *5 (E.D. Cal.

14   Oct. 15, 2013).  Here, plaintiff alleges that he was terminated "in violation of the public policy set

15   forth in the [FEHA], California Government Code section 12940, *et seq.*, as well as California

16   Labor Code sections 96(k), 98.6, 1101, and 1102."  (Doc. No. 12 at ¶ 62.)  As discussed above,

17   plaintiff has failed to adequately allege both his discrimination claims under FEHA and his

18   retaliation claim brought under California Labor Code §§ 96(k), 98.6, 1101, and 1102.  Thus,

19   plaintiff's derivative claim for wrongful termination in violation of public policy must also be

20   dismissed because it is based on these insufficiently alleged violations of public policy.  *See*

21   *Whitehead*, 2022 WL 313844, at *2 (dismissing a "derivative" "wrongful discharge in violation

22   _____

Nos. 12 at ¶¶ 92–93; 19 at 11–12.)  Even if plaintiff were to allege that he was asserting the

23   protection of free speech rights under the First Amendment, that would be insufficient basis to
     allege the assertion of a recognized constitutional right in this case where the termination of

24   employment was by a private employer.  *See Grinzi*, 120 Cal. App. 4th at 84 ("[W]e conclude the
     First Amendment free speech provision does not support a public policy on which to base a

25   tortious discharge claim [under § 98.6], against a private employer's termination of an employee
     for the employee's exercise of such First Amendment rights.").  Thus, plaintiff has failed to state

26   a § 98.6 claim based on a purported violation of § 96(k).  Although plaintiff will be granted leave
     to amend this claim, he should only attempt to assert a violation of California Labor Code § 96(k)

27   in any second amended complaint he elects to file if he can do so in good faith and consistent
     with the requirements of Federal Rule of Civil Procedure 11.

28

of public policy" claim where the plaintiff failed to plausibly allege a claim of discrimination);

*Dauth v. Convenience Retailers, LLC*, No. 13-cv-00047 MEJ, 2013 WL 5340396, at *3 (N.D.

Cal. Sept. 24, 2013) (dismissing a wrongful termination in violation of public policy claim to the

extent it rested on an asserted violation of the fundamental public policy established by a

California Labor Code retaliation statute).

Accordingly, defendant's motion to dismiss plaintiff's wrongful termination claim will

also be granted, with leave to amend.

## CONCLUSION

For the reasons explained above,

1.   Defendant's request for judicial notice (Doc. No. 17) is granted;

2.   Defendant's motion to dismiss (Doc. No. 13) is granted in its entirety; and

3.   Any second amended complaint that plaintiff may elect to file in this action shall
     be filed within twenty-one (21) days after the date of entry of this order.

IT IS SO ORDERED.

Dated:   **April 19, 2023**

UNITED STATES DISTRICT JUDGE