1

MATTHEW J. RUGGLES (SBN 173052)
**RUGGLES LAW FIRM**
7940 CALIFORNIA AVENUE
FAIR OAKS, CA 95628
TEL: (916) 758-8058
FAX: (916) 758-8048
mruggles@ruggleslawfirm.com

ATTORNEY FOR PLAINTIFF
GRANT NAPEAR

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT NAPEAR,<br><br>                    Plaintiff,<br><br>vs.<br><br>BONNEVILLE INTERNATIONAL<br>CORPORATION, a Utah corporation;<br>and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 2:21-cv-01956-DAD-DB<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES:**<br><br>1. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br>2. **DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT BASED ON RELIGION**<br>3. **RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 1101 AND 1102**<br><br>**JURY TRIAL DEMANDED** |

SECOND AMENDED COMPLAINT FOR DAMAGES
- 1-

**JURISDICTION**

1.      The United States District Court has original jurisdiction over this matter pursuant to 28 U.S.C. section 1332(a)(1)("diversity jurisdiction") because there exists complete diversity between the parties, and the amount in controversy exceeds $75,000.00.  Specifically, Plaintiff GRANT NAPEAR alleges the following facts:

a.      At all relevant times, Plaintiff GRANT NAPEAR was a citizen of the State of California and a resident of Sacramento County, California.

b.      Defendant BONNEVILLE INTERNATIONAL CORPORATION is a Utah corporation with its principal place of business in Salt Lake City, Utah. At all relevant times, Defendant BONNEVILLE INTERNATIONAL CORPORATION employed Plaintiff GRANT NAPEAR in Sacramento, California.

c.      Plaintiff's damages (including lost and future wages, emotional distress damages, and punitive damages) and reasonable attorney's fees in this matter exceed $75,000.00, exclusive of interest and costs.

2.      Venue in the United States District Court for the Eastern District of California is proper because the injuries to Plaintiff occurred within the County of Sacramento.

3.      Within the time provided by law, Plaintiff GRANT NAPEAR filed a complaint with the California Department of Fair Employment and Housing (DFEH Matter No. 202110-15078714) and received a Right-to-Sue letter dated October 14, 2021.

4.      The true names and capacities of the Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same

have been ascertained.  Plaintiff is informed and believes, and thereupon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

5.     Plaintiff is informed and believes, and thereupon alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, servant, co-venturer, and/or employee of each of the other Defendants and was at all times herein mentioned acting within the scope of said agency, venture, and/or employment and with actual or ostensible authority and/or agency and that each of the Defendants ratified the actions and/or conduct of the others.

## FACTS COMMON TO ALL CAUSES OF ACTION

6.     Plaintiff GRANT NAPEAR has been a Christian and a practicing member of the Unitarian Universalist Church ("Unitarian Church") his entire life.  As a child growing up in New York, his family attended the Unitarian Universalist Church located at 40 East 35th Street, in New York, New York, where his father was an active and prominent member of the congregation.  In fact, Plaintiff GRANT NAPEAR's middle name is Harrington, in recognition of the contributions made by Reverend Donald Harrington who was appointed the minister of the Community Church of the New York Unitarian Universalist in New York City in 1944.

7.     As a devout member, Plaintiff GRANT NAPEAR has embraced and followed the seven (7) Principles of the Unitarian Church which are as follows:

i.      The inherent worth and dignity of every person;

ii.     Justice, equity and compassion in human relations;

iii.    Acceptance of one another and encouragement to spiritual growth in our congregations;

iv.     A free and responsible search for truth and meaning;

v.      The right of conscience and the use of the democratic process within our congregations and in society at large;

vi.     The goal of world community with peace, liberty and justice for all;

vii.    Respect for the interdependent web of all existence of which we are a part.

8.      In 1981, Plaintiff GRANT NAPEAR graduated from Bowling Green State University with a Bachelor of Arts degree in Broadcast Journalism.

9.      In July of 1987, Plaintiff GRANT NAPEAR was hired by the Sacramento local television station commonly known as Channel 31 to work as the Sports Director and to anchor the sports segment of the daily news broadcast, Monday through Friday.

10.     In 1988, Plaintiff GRANT NAPEAR's job duties with Channel 31 were expanded and he became the television play-by-play announcer for all televised basketball games played by the Sacramento Kings, the Sacramento-based team of the National Basketball Association.

11.     In 1995, representatives from KHTK 1140AM offered Plaintiff GRANT NAPEAR a new position as an on-air talk show host for a sports radio talk show.  Plaintiff GRANT NAPEAR accepted the offer and created a radio talk show which began to air regionally throughout Sacramento and the surrounding area from 4:00 p.m. until 7:00 p.m., Monday through Friday.

12.     As part of his compensation for working as a radio talk show host, KHTK 1140AM paid Plaintiff GRANT NAPEAR an annual salary.  In addition to his salary, KHTK 1140AM also paid Plaintiff GRANT NAPEAR compensation based upon advertising revenue paid by businesses to advertise during his sport broadcast.

13.     Within 1-2 years after starting his radio show, Plaintiff GRANT NAPEAR's radio program became the number one talk show host in his market share.

14.     Each year, beginning in 1995 until approximately 2018, KHTK 1140AM offered Plaintiff GRANT NAPEAR an annual employment contract in connection with his radio show which aired daily, from 4:00 p.m. to 7:00 p.m., Monday through Friday.

15.     At no time from 1995 through 2018 was Plaintiff GRANT NAPEAR ever subjected to any formal or informal discipline or suspension for any reason by KHTK 1140AM.

16.     On or about September 21, 2018, Defendant BONNEVILLE INTERNATIONAL CORPORATION purchased KHTK 1140AM.  Defendant BONNEVILLE INTERNATIONAL CORPORATION describes itself as an "integrated media and marketing solutions company." Founded in 1964, Defendant BONNEVILLE INTERNATIONAL CORPORATION operates radio and TV stations, local websites, podcasts and other digital distribution assets in six western U.S. markets, including four radio stations in the Sacramento, California market:  MIX 96, NOW 100.5, New Country 105.1 KNCI, and KHTK 1140AM.  Headquartered in Salt Lake City, Utah, Defendant BONNEVILLE INTERNATIONAL CORPORATION is a subsidiary of Deseret Management Corporation (DMC), a for-profit arm of The Church of Jesus Christ of Latter-day Saints, commonly referred to as "the Mormon Church."

17.     In   2019, Defendant BONNEVILLE INTERNATIONAL CORPORATION renewed Plaintiff GRANT NAPEAR's Employment Contract for his 26th consecutive year as the host of the GRANT NAPEAR SHOW WITH DOUG CHRISTIE.   The term of the Employment Contract was from August 1, 2019 through July 31, 2020.

18.     Pursuant to his Employment Contract, Plaintiff GRANT NAPEAR's job was to provide services as an On-Air Talent for KHTK 1140AM.

19.     Plaintiff GRANT NAPEAR's Employment Contract obligated him to perform his duties loyally and conscientiously at all times and to discharge all responsibilities and obligations

required of him to the best of his ability and experience and consistent with the highest standards broadcast/media industry.  Plaintiff GRANT NAPEAR agreed to faithfully adhere to and execute all lawful policies established from time to time by Defendant BONNEVILLE INTERNATIONAL CORPORATION, including without limitation the Company's policies concerning equal employment opportunity and/or prohibiting of harassment and discrimination.

20.     During his employment with Defendant BONNEVILLE INTERNATIONAL CORPORATION, Plaintiff GRANT NAPEAR never violated any policies concerning equal employment opportunity and/or prohibiting harassment and discrimination.  Plaintiff GRANT NAPEAR never was subject to any formal or informal discipline due to accusations of misconduct arising from allegations of alleged harassment or discrimination, or any other form of alleged immoral misconduct.

21.     Pursuant to the terms of the Employment Contract with Defendant BONNEVILLE INTERNATIONAL CORPORATION, Plaintiff GRANT NAPEAR agreed that he would refrain from any offense or distasteful remarks or conduct, the broadcast of which would not be in the public interest or could jeopardize the Company's federal license to operate KHTK.  Plaintiff GRANT NAPEAR also agreed to faithfully comply to the best of his ability with all of the Company's directives relating to on-air material and the manner of delivering or using on-air material.  Finally, Plaintiff GRANT NAPEAR agreed to act in conformity with the public conventions and morals and not commit any act or do anything that would be an offense involving moral turpitude under federal, state, or local law or which might bring either himself or the Company into public disrepute, contempt, scandal, scorn, or ridicule or otherwise injure the Company.

22.     Notably, Defendant BONNEVILLE INTERNATIONAL CORPORATION never furnished Plaintiff GRANT NAPEAR with any directives concerning on-air material or the manner in which he delivered or used on-air material.

23.     Plaintiff GRANT NAPEAR accepted Defendant BONNEVILLE INTERNATIONAL CORPORATION's renewed Employment Contract and worked his 26th consecutive year on the GRANT NAPEAR SHOW WITH DOUG CHRISTIE starting August 1, 2019.  His Employment Contract was scheduled to expire on July 31, 2020, unless renewed.

24.     In May of 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION notified Plaintiff GRANT NAPEAR of the Company's intention to renew Plaintiff GRANT NAPEAR's Employment Contract for the succeeding year: August 1, 2020 through July 31, 2021.

25.     Over the course of his 26-year broadcasting career, Plaintiff GRANT NAPEAR became a prominent member of the media industry.  Plaintiff interviewed hundreds and hundreds of professional and Hall of Fame athletes in nearly all professional sports including professional basketball players Chris Webber, Michael Jordan, Charles Barkley, Shaquille O'Neal, DeMarcus Cousins; professional football players Joe Montana, Jerry Rice, Ronnie Lott, Steve Young, Aaron Rodgers; professional baseball players John Smoltz, Mark McGwire, Will Clark, Jose Canseco, Steve Garvey as well as Major League managers including Dusty Baker, Tony La Russa and Sparky Anderson.  Plaintiff GRANT NAPEAR often was selected to work for ESPN in a broadcast capacity and often substituted for a nationally known broadcaster, Jim Rome, on the Jim Rome Show.

26.     As recently as 2017, the National Academy of Television Arts & Sciences awarded Plaintiff GRANT NAPEAR with a second Emmy Award for his broadcasting of the Sacramento Kings basketball games.

27.     During his broadcast career with KHTK 1140AM, Plaintiff GRANT NAPEAR co-founded the Future Foundation Sacramento, an organization created to provide volunteer mentoring and scholarship funding to over 100 local students who were financially challenged, in support of their college education. Plaintiff GRANT NAPEAR himself mentored five (5) local Sacramento students who went on to graduate from college.

28.     Although his Employment Contract did not bar him from doing so, Plaintiff GRANT NAPEAR believed that discussing religion or politics during a sports broadcast was inappropriate on-air material and for that reason, always kept his religious and political beliefs to himself during radio broadcasts.

29.     When he was not on the air broadcasting his sports radio show on KHTK 1140AM, Plaintiff GRANT NAPEAR periodically spoke with his co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION about his religion and his faith in God, as well as how Plaintiff was raised by his family, including the religious values and beliefs that were instilled in Plaintiff from his parents beginning as a child. Plaintiff GRANT NAPEAR did not keep a list of every co-worker he ever spoke to about his religion, his religious practices, his religious worship, and his relationship and faith in God, but Plaintiff was open about his religious beliefs and discussed the topic at work. Additionally, Plaintiff often attended religious services on Sundays, and discussed this fact with his co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION. Plaintiff can specifically recall discussing his religion with his former co-host, Mike Lamb, as well as Doug Christie, and Plaintiff believes that he

discussed the subject with other co-workers that he cannot specifically recall.  Based on these periodic discussions, conversations and exchanges with his co-workers, Plaintiff GRANT NAPEAR is informed and believes and on that basis alleges that at least some of Plaintiff's co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION and KHTK 1140AM knew that Plaintiff GRANT NAPEAR was a religious person and followed the religious principles and beliefs of the Unitarian Universalist Church.  In fact, Mike Lamb, Plaintiff GRANT NAPEAR'S former co-host at KHTK 1140AM, attended Plaintiff's father's funeral in New York in 2007 which was held at a Unitarian Universalist Church which further demonstrated Plaintiff GRANT NAPEAR'S affiliation and membership in the Unitarian Universalist Church.

## SOCIAL MEDIA PUBLICATION ON MAY 31, 2020

30.     On the night of Sunday, May 31, 2020, Plaintiff GRANT NAPEAR was not working and was in the privacy of his own home watching regional and national news broadcasts televising events involving protests over the death of George Floyd in Minnesota.

31.     At approximately 8:30 p.m., Plaintiff GRANT NAPEAR was notified of a tweet from DeMarcus Cousins, a former Sacramento Kings  Basketball player, who asked him one question:   "What's your take on BLM?"

32.     Plaintiff GRANT NAPEAR responded as follows: "Hey!!! How are you? Thought you forgot about me. Haven't heard from you in years. ALL LIVES MATTER...EVERY SINGLE ONE."

33.     On Monday, June 1, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION's representative, STEVE COTTINGIM, informed Plaintiff GRANT NAPEAR that Plaintiff was suspended from his radio show.

34.     Plaintiff GRANT NAPEAR asked for an opportunity to return to his radio show and explain on the air that his tweet to DeMarcus Cousins was intended to be inclusive of Black Lives Matter by the phrase "EVERY SINGLE ONE."   Defendant BONNEVILLE INTERNATIONAL CORPORATION refused without any explanation or justification.

35.     The next day, June 2, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION summarily fired Plaintiff GRANT NAPEAR, effective immediately, and Plaintiff immediately was barred from the Company premises as if he were a criminal.

36.     On   June   3,   2020,   Defendant   BONNEVILLE   INTERNATIONAL CORPORATION informed the Plaintiff GRANT NAPEAR that his termination was "For Cause" as defined by his Employment Contract at paragraph 6(c)(7), which states:

> c.   **Cause Defined**.   For purposes of this Agreement, the term "Cause" shall be defined as any of the following conduct by Employee, as determined by the Company in its reasonable discretion:

> vii.   **Any act of material dishonesty, misconduct, or other conduct that might discredit the goodwill, good name, or reputation of the Company**.

37.     No one from Defendant BONNEVILLE INTERNATIONAL CORPORATION ever informed Plaintiff GRANT NAPEAR whether he was terminated for "material dishonesty," "misconduct," or "other conduct that might discredit the goodwill, good name or reputation of the Company."   Moreover, no one told Plaintiff GRANT NAPEAR that his tweet to Demarcus Cousins discredited the goodwill, good name or reputation of Defendant BONNEVILLE INTERNATIONAL CORPORATION.

38.     Following his termination, Defendant BONNEVILLE INTERNATIONAL CORPORATION published on social media the following statement:

> We were saddened by the comments Grant Napear recently made on Twitter. While we appreciate Grant's positive contributions to KHTK over the years, his

recent comments about the Black Lives Matter movement do not reflect the views or values of Bonneville International Corporation.  The timing of Grant's tweet was particularly insensitive.  After reviewing the matter carefully, we have made the difficult decision to part ways with Grant.

Bonneville's purpose is to build up, connect, inform and celebrate communities and families.  In the wake of George Floyd's tragic death and the events of the last several days, it is crucial that we communicate the tremendous respect that we have for the black community and any other groups or individuals who have cause to feel marginalized.  Bonneville remains committed to fostering calm and promoting human dignity in the face of unrest.  We plead to all to work together for peace and mutual respect.

39.     After terminating his employment in June of 2020, and after Plaintiff GRANT NAPEAR initiated his lawsuit in the United States District Court, Defendant BONNEVILLE INTERNATIONAL CORPORATION informed Plaintiff that he was not terminated based only on the tweet that "ALL LIVES MATTER…EVERY SINGLE ONE;"  instead, Defendant BONNEVILLE INTERNATIONAL CORPORATION now contends that NAPEAR was terminated <u>only</u> after the Sacramento Kings Basketball Team held a "basketball team meeting" about NAPEAR's continued employment with the Sacramento Kings.  According to Defendant BONNEVILLE INTERNATIONAL CORPORATION, during the team meeting the Sacramento Kings allegedly held a "vote" in which team players and team executives "voted" to end the Sacramento King's employment relationship with NAPEAR.   Defendant BONNEVILLE INTERNATIONAL CORPORATION further contends that its own decision to terminate NAPEAR was based on the fact that the Sacramento Kings Basketball Team purportedly had "voted" to end the Sacramento King's employment relationship with NAPEAR, and therefore NAPEAR's termination from the Sacramento Kings was an "act of misconduct" that allegedly "discredited" the "goodwill, good name, or reputation" of Defendant BONNEVILLE INTERNATIONAL CORPORATION.

40.     Defendant BONNEVILLE INTERNATIONAL CORPORATION's latest explanation for the termination of NAPEAR is complete fiction because there was no Sacramento Kings Basketball Team meeting, and no one at the Sacramento Kings "voted" on whether NAPEAR should be terminated.   The entire notion that the result of the Sacramento Kings Basketball Team's alleged "vote" was the impetus for Defendant BONNEVILLE INTERNATIONAL CORPORATION's decision to terminate NAPEAR's employment is demonstrably false:   NAPEAR was not terminated by the Sacramento Kings; even so, NAPEAR's employment with the Sacramento Kings did not end until <u>after</u> Defendant BONNEVILLE INTERNATIONAL CORPORATION terminated NAPEAR on June 2, 2020.

41.     The notion that Plaintiff GRANT NAPEAR's tweet that "ALL LIVES MATTER…EVERY SINGLE ONE" was offensive to any particular group or to Black people is entirely false.   For instance, upon learning of Derek Chauvin's conviction for murdering his brother George Floyd, Philonese Floyd announced to the crowd outside the Minneapolis courthouse that "I just want to reiterate: not just black lives matter, **all lives matter**."   *See* https://www.bizpacreview.com/2021/06/26/george-floyds-brother-responds-to-chauvin-sentencing-not-just-black-lives-matter-all-lives-matter-1094301/.

42.     After the conviction of the murderers of Ahmaud Arbery, Ms. Arbery's father declared to the crowd outside the   courthouse that "for real, **All Lives Matter**."   *See* https://www.breitbart.com/politics/2021/11/24/watch-ahmaud-arberys-father-declares-all-lives-matter-after-guilty-verdict-in-sons-murder/.    Indeed, NBA basketball star LeBron James affirmed that "**all lives do matter**" when speaking about the shooting deaths of Terence Crutcher and Keith Lamont Scott.. *See* https://hellobeautiful.com/2903784/lebron-james-all-lives-matter/.

43.     Prior to Plaintiff's termination on June 2, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION never provided Plaintiff GRANT NAPEAR with any instruction or guidance related to use of the phrase "ALL LIVES MATTER…EVERY SINGLE ONE" or how to respond to questions about the Black Lives Matter movement.  In fact, prior to May 31, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION never had publicly expressed any direct or indirect support for the Black Lives Matter movement, and therefore Plaintiff GRANT NAPEAR had no information, facts or basis to conclude that the phrase "ALL LIVES MATTER…EVERY SINGLE ONE" allegedly did not support the "views or values" of Defendant BONNEVILLE INTERNATIONAL CORPORATION.

44.     Plaintiff GRANT NAPEAR's opinion regarding the sanctity of all lives, and his public message that "ALL LIVES MATTER…EVERY SINGLE ONE" was not an act of misconduct.  Defendant BONNEVILLE INTERNATIONAL CORPORATION never provided Plaintiff GRANT NAPEAR with any guidance, restrictions or other instructions or advice regarding how to respond to any questions regarding Black Lives Matter.  The expression of Plaintiff GRANT NAPEAR's opinion during off-duty hours was not a violation of any contract term or provision, and did not constitute an "act of material dishonesty, misconduct or other conduct that might discredit the goodwill, good name, or reputation of the Company."

45.     Defendant BONNEVILLE INTERNATIONAL CORPORATION's decision to falsely accuse Plaintiff GRANT NAPEAR of racist misconduct and publicly terminate his employment on the grounds he engaged in "material dishonesty and/or misconduct which might discredit the goodwill, good name or reputation of the Company" has completely and permanently damaged Plaintiff GRANT NAPEAR's 26-year Emmy award winning career as a

sports broadcaster in particular, and also has had serious negative effects on Plaintiff's personal life and his public reputation.

## FIRST CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

46.     As a first, separate, and distinct cause of action, Plaintiff GRANT NAPEAR complains about Defendant BONNEVILLE INTERNATIONAL CORPORATION and re-alleges all of the allegations in the Second Amended Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

47.     On or about June 2, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION terminated Plaintiff GRANT NAPEAR in violation of the public policy set forth in the California Fair Employment and Housing Act, California Government Code section 12940, *et seq*., as well as California Labor Code sections 1101 and 1102.

48.     Defendant BONNEVILLE INTERNATIONAL CORPORATION did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure Plaintiff.  These acts, which resulted in Plaintiff's wrongful termination against public policy, were despicable, and ought not to be suffered by any member of the community.

49.     As a direct, foreseeable and proximate result of Defendant's wrongful termination in violation of public policy, Plaintiff has suffered economic damages including back pay, front pay, equity, benefits and other compensation.

50.     As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial.

51.     All actions of Defendant BONNEVILLE INTERNATIONAL CORPORATION, its employees and agents, and each of them as herein alleged, were known, ratified and approved by DARRELL BROWN, the President of Defendant BONNEVILLE INTERNATIONAL CORPORATION.   Therefore, Plaintiff is entitled to punitive or exemplary damages against Defendant BONNEVILLE INTERNATIONAL CORPORATION in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF THE CALIFORNIA
### FAIR EMPLOYMENT AND HOUSING ACT BASED ON RELIGION

52.     As a second, separate, and distinct cause of action, Plaintiff GRANT NAPEAR complains about Defendant BONNEVILLE INTERNATIONAL CORPORATION and re-alleges all of the allegations in the Second Amended Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

53.     At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12940, *et seq*., was in full force and effect and was fully binding upon Defendant BONNEVILLE INTERNATIONAL CORPORATION. Specifically, Government Code section 12940 prohibits an employer from discriminating against an employee on the basis of the employee's religion and/or religious beliefs and/or the expression of an employee's religious beliefs.

54.     On or about June 2, 2020, Defendant BONNEVILLE INTERNATIONAL CORPORATION terminated Plaintiff GRANT NAPEAR in violation of California Government Code section 12940, *et seq*., based on Plaintiff GRANT NAPEAR'S religious beliefs and Plaintiff's expression of those beliefs on May 31, 2020, but concealed by false and pretextual

reasons related to the terms of Plaintiff's employment contract.  Plaintiff alleges that Defendant BONNEVILLE INTERNATIONAL CORPORATION'S decision to terminate Plaintiff's employment was substantially motivated by illegal animus based upon Plaintiff GRANT NAPEAR's expression of his sincerely held Christian religious belief because Plaintiff published the Christian religious message on May 31, 2020 that "ALL LIVES MATTER…EVERY SINGLE ONE" in response to the question "What's your take on BLM?"

55.    Plaintiff GRANT NAPEAR's public message that "ALL LIVES MATTER…EVERY SINGLE ONE" was a personal expression of Plaintiff GRANT NAPEAR'S sincerely held Christian religious belief regarding the inherent worth and dignity of every single living person because all people are created in the image of God, and as reflected by the First Principle of the Unitarian Church.  From Plaintiff GRANT NAPEAR'S perspective as a Christian, the message "ALL LIVES MATTER…EVERY SINGLE ONE" reflects the Christian religious belief that all human beings are made in the image of God and therefore have inherent value and worth. This belief is rooted in the Bible, which teaches that God created human beings in his own image (Genesis 1:27) and that every human life is precious to God (Psalm 139:13-16).

56.    Plaintiff GRANT NAPEAR's public message that "ALL LIVES MATTER…EVERY SINGLE ONE" was a self-evident expression of Plaintiff GRANT NAPEAR'S sincerely held Christian religious belief regarding the inherent worth and dignity of every single living person.  Many people that know Plaintiff GRANT NAPEAR and his character, including but not limited to Plaintiff's co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION, understood Plaintiff GRANT NAPEAR'S public

message on May 31, 2020 that "ALL LIVES MATTER…EVERY SINGLE ONE" as an expression of Plaintiff GRANT NAPEAR'S Christian religious beliefs.  Further, as evidenced by numerous written comments, emails and letters received by the Sacramento Kings and by Defendant BONNEVILLE INTERNATIONAL CORPORATION, members of the public also recognized the religious nature and religious principles reflected by Plaintiff GRANT NAPEAR'S public expression of the phrase "ALL LIVES MATTER…EVERY SINGLE ONE."

57.    Plaintiff GRANT NAPEAR is informed and believes and on that basis alleges that the person hired by Defendant BONNEVILLE INTERNATIONAL CORPORATION to replace Plaintiff was not a member of the Unitarian Universalist Church and did not make any public expression of such Christian religious beliefs, and to this day has not made any public expressions of any such religious beliefs.  Plaintiff GRANT NAPEAR is informed and believes that his replacement at KHTK 1140 has not made any public expression of his own religious beliefs because as an employee of Defendant BONNEVILLE INTERNATIONAL CORPORATION, Plaintiff's replacement knows that doing so will have the same result as Plaintiff GRANT NAPEAR: summary termination of employment.

58.    As a direct, foreseeable and proximate result of the Defendant's unlawful actions, Plaintiff has suffered economic damages including back pay, front pay, equity, benefits and other compensation.

59.    As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial.

60.     All actions of Defendant BONNEVILLE INTERNATIONAL CORPORATION, its employees and agents, and each of them as herein alleged, were known, ratified and approved by DARRELL BROWN, the President of Defendant BONNEVILLE INTERNATIONAL CORPORATION.   Therefore, Plaintiff is entitled to punitive or exemplary damages against Defendant BONNEVILLE INTERNATIONAL CORPORATION in an amount to be determined at the time of trial.

**THIRD CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF CALIFORNIA**
**LABOR CODE SECTIONS 1101 AND 1102**

61.     As a third, separate, and distinct cause of action, Plaintiff GRANT NAPEAR complains about Defendant BONNEVILLE INTERNATIONAL CORPORATION and re-alleges all of the allegations in the Second Amended Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

62.     In doing the things herein alleged, including the wrongful termination of Plaintiff GRANT NAPEAR's employment and as otherwise to be proven at trial, Defendant BONNEVILLE INTERNATIONAL CORPORATION violated Labor Code section 1101, which provides that:

No employer shall make, adopt, or enforce any rule, regulation, or policy:

(a)  Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.

(b)  Controlling or directing, or tending to control or direct the political activities or affiliations of employees.

Additionally, Defendant BONNEVILLE INTERNATIONAL CORPORATION violated Labor Code section 1102, which provides that:

No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.

63.    Plaintiff GRANT NAPEAR's public political message on May 31, 2020 that "ALL LIVES MATTER…EVERY SINGLE ONE" was a personal expression of Plaintiff GRANT NAPEAR'S political opinion and ideology that all persons are created and remain equal under the law regardless of race, gender, religion, national origin, political affiliation, or any other basis.   Plaintiff GRANT NAPEAR alleges that although the phrase "ALL LIVES MATTER…EVERY SINGLE ONE" is not (and never was intended to be) a specific rejection, repudiation or denial of the importance of the Black Lives Matter political movement or BLM's political message that "Black Lives Matter," those same words express Plaintiff's political messages that civil and criminal rights should apply equally to all persons, regardless of race.  As expressed in Rev. Martin Luther King, Jr.'s famous political speech "I Have a Dream," Plaintiff GRANT NAPEAR believes that people should not be judged "by the color of their skin but by the content of their character."     By publicly expressing the phrase "ALL LIVES MATTER…EVERY SINGLE ONE" in response to the political question "What's you take on BLM?," Plaintiff GRANT NAPEAR was expressing that political message and ideology and encouraging other members of society to adopt and follow a more inclusive political belief and point of view compared to the less inclusive political message of the Black Lives Matter political movement.

64.    The reasonable and natural inference from Defendant BONNEVILLE INTERNATIONAL CORPORATION's public announcement of Plaintiff GRANT NAPEAR'S termination was that Plaintiff GRANT NAPEAR was fired because he expressed a political

viewpoint that was "anti-BLM" because, according to Defendant BONNEVILLE INTERNATIONAL CORPORATION, Plaintiff's political message was in conflict with the political slogan that "Black Lives Matter," the centerpiece and primary message of the BLM political movement and organization.  Defendant BONNEVILLE INTERNATIONAL CORPORATION interpreted Plaintiff GRANT NAPEAR'S public political message that "ALL LIVES MATTER…EVERY SINGLE ONE" as "anti-BLM" because Plaintiff's public message purportedly conveyed to some an objectionable political message that allegedly was inconsistent with the Black Lives Matter political movement and slogan because, according to Defendant BONNEVILLE INTERNATIONAL CORPORATION, it dismissed the concerns that many members of the Black community and others had about George Floyd's death, allegedly refocused the issue away from questions about racial discrimination, and purportedly diminished the unique challenges faced by the Black community more generally.  Simply put, Defendant BONNEVILLE INTERNATIONAL CORPORATION believed and concluded that Plaintiff's public political message that "ALL LIVES MATTER…EVERY SINGLE ONE" was "*politically* incorrect."

65.    Defendant BONNEVILLE INTERNATIONAL CORPORATION'S public termination message that "[t]he timing of Grant's tweet was particularly insensitive" was an indirect reference to the Demarcus Cousins' question to Plaintiff: "What's your take on BLM?" Plaintiff GRANT NAPEAR is informed and believes and on that basis alleges that Defendant considered Plaintiff's public political message that "ALL LIVES MATTER…EVERY SINGLE ONE" to be "particularly insensitive" because Defendant wrongfully and illegally considered Plaintiff's response to be "politically incorrect," meaning that Plaintiff's message was "insensitive" because it purportedly was critical of the political message "Black Lives Matter"

and because the Black Lives Matter movement considers the phrase "ALL LIVES MATTER" to be a political slur against the Black community in general and the Black Lives Matter political movement in particular.  For instance, STEVE COTTINGIM, the Senior Vice President / Market Manager for Bonneville Sacramento, who was directly involved in Plaintiff's termination, testified at his deposition that the phrase "ALL LIVES MATTER" is inappropriate <u>only</u> in the context of a direct response to the specific question "Do you support Black Lives Matter."  In other words, according to Defendant BONNEVILLE INTERNATIONAL CORPORATION'S Senior Vice President in Sacramento, the phrase "ALL LIVES MATTER" is only inappropriate in the context of the public political exchange that happened on May 31, 2020 between Demarcus Cousins and Plaintiff GRANT NAPEAR.

66.     Defendant BONNEVILLE INTERNATIONAL CORPORATION disapproved of Plaintiff GRANT NAPEAR'S May 31, 2020 public political message because it was "anti-BLM" because it was inconsistent with the political message and slogan that "Black Lives Matter," the primary political message and slogan of the Black Lives Matter movement.  Management of Defendant BONNEVILLE INTERNATIONAL CORPORATION disapproved of Plaintiff GRANT NAPEAR'S alleged "anti-BLM" political message because Defendant BONNEVILLE INTERNATIONAL CORPORATION was concerned that any public message that did not expressly support the Black Lives Matter movement, organization or slogan, especially on May 31, 2020, would result in political protestors in Sacramento focusing on Defendant BONNEVILLE INTERNATIONAL CORPORATION, including but not limited to potential property damage to KHTK 1140AM's office building and broadcasting studio in Sacramento because of the widespread rioting, looting and arson that took place throughout Sacramento in response to the murder of George Floyd.  The Sacramento Police Department reported that during

the period of unrest from late May 2020 to early June 2020, numerous businesses were looted and vandalized, and fires were set in the Sacramento area.  For instance, in an email dated June 3, 2020 from Jennifer Williams, the Sacramento-based Director of Digital Media and Strategic Initiatives at Defendant BONNEVILLE INTERNATIONAL CORPORATION to Jason Ross, the Program Director at KHTK 1140AM, Ms. Williams expressly mentioned that she was "hiding a few comments on social [media] that promote setting our building on fire FYI."  A true and correct copy of the June 3, 2020 email message, sent in direct response to Jason Ross's internal announcement of the termination of Plaintiff GRANT NAPEAR, is attached hereto as Exhibit A.

67.    Plaintiff GRANT NAPEAR is informed and believes and on that basis alleges that the specific individuals that objected to Plaintiff's May 31, 2020 tweet because of the political and/or religious nature of Plaintiff's six-word public message included Steve Cottingim (Vice President of Defendant and Plaintiff's direct supervisor), Matthew Sadowski (Senior Vice President of Defendant), Darrell Brown (President of Defendant), Rachel Conrado (Human Resources Business Partner at Defendant), Mike Dowdle (Executive Vice President of Business Affairs at Defendant), Kirby Brown (CFO at Deseret Management Corp., the parent company of Defendant), and Sheri Dew (Executive Vice President at Desert Management Corp., the parent company of Defendant), each of whom was involved in the decision to terminate Plaintiff's employment and each of whom expressed negative emotion regarding Plaintiff GRANT NAPEAR based on Plaintiff's public political message that "ALL LIVES MATTER...EVERY SINGLE ONE."

68.    By publicly terminating Plaintiff GRANT NAPEAR for expressing his political belief and ideology that "ALL LIVES MATTER…EVERY SINGLE ONE," Defendant BONNEVILLE INTERNATIONAL CORPORATION used Plaintiff GRANT NAPEAR as a

proverbial "sacrificial lamb" to demonstrate to the Black Lives Matter political movement and organization that Defendant BONNEVILLE INTERNATIONAL CORPORATION purportedly was aligned with the goals, values and politics of the Black Lives Matter political slogan, political message and political movement, and as a result hoped to curry favor with the powerful Black Lives Matter political movement and political organization, as well as Black community generally.

69.    Defendant BONNEVILLE INTERNATIONAL CORPORATION used the termination of Plaintiff GRANT NAPEAR as an example to all other employees of the Company as an implicit warning that anyone that dared to speak out publicly and criticize the politics of the Black Lives Matter movement would be summarily terminated, just like Plaintiff GRANT NAPEAR.   In fact, several employees of Defendant BONNEVILLE INTERNATIONAL CORPORATION made internal complaints based on that specific concern to the Company in direct response to Defendant's public message terminating Plaintiff GRANT NAPEAR'S employment.

70.    By retaliating against and terminating the employment of Plaintiff GRANT NAPEAR for expressing that "ALL LIVES MATTER … EVERY SINGLE ONE," Defendant BONNEVILLE INTERNATIONAL CORPORATION violated Labor Code sections 1101 and 1102.

71.    As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered economic damages including back pay, front pay, equity, benefits and other compensation.

72.     As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial.

73.     All actions of Defendant BONNEVILLE INTERNATIONAL CORPORATION, its employees and agents, and each of them as herein alleged, were known, ratified and approved by DARRELL BROWN, the President of Defendant BONNEVILLE INTERNATIONAL CORPORATION.   Therefore, Plaintiff is entitled to punitive or exemplary damages against Defendant BONNEVILLE INTERNATIONAL CORPORATION in an amount to be determined at the time of trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff GRANT NAPEAR prays for judgment against Defendant BONNEVILLE INTERNATIONAL CORPORATION as follows:

1.     For money judgment for mental pain, anguish and emotional distress, according to proof;

2.     For a money judgment representing compensatory damages including lost past and future wages and all other sums of money, including employment benefits, together with interest on said amounts, and any other economic injury to Plaintiff, according to proof;

3.     For an award of punitive and/or exemplary damages against Defendant BONNEVILLE INTERNATIONAL CORPORATION;

4.     For costs of suit, including an award of attorney's fees pursuant to California Government Code section 12940, *et seq*. and/or any applicable statutory basis;

5.     For reinstatement to his former employment with Defendant BONNEVILLE INTERNATIONAL CORORPORATION upon the same terms, conditions and compensation as Plaintiff's former employment with the Company;

6.     For prejudgment interest, according to statute;

7.     For any other relief that is just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff GRANT NAPEAR demands a trial of all issues by jury.

DATED:  May 11, 2023                                     RUGGLES LAW FIRM


By: _____
       MATTHEW J. RUGGLES
       Attorney for Plaintiff
       GRANT NAPEAR

# EXHIBIT A

**From**: Jennifer Williams [jewilliams@bonneville.com]
**Sent**: 6/3/2020 9:06:51 PM
**To**: Jason Ross [jross@bonneville.com]
**Subject**: Re: KHTK

Great quote!

Hang in there dude...I certainly have felt the winds of change myself recently.  Let me know if I can help in any way....I've been hiding a few comments on social that promote setting our building on fire FYI.  Leaving all others for free speech...

JW

**From:** Jason Ross <jross@bonneville.com>
**Sent:** Wednesday, June 3, 2020 2:01 PM
**To:** BIC-SAC-ALL <sacstaffall@bonneville.com>
**Subject:** KHTK

Bonneville Sacramento Family:

I wanted to give everyone a brief status update to Sports 1140 KHTK.  Yesterday both Bonneville and the Sacramento Kings decided to part ways with Grant Napear.  I personally would like to thank Grant for his 25 years of dedication to the radio station and 30 plus years with the Sacramento Kings.  With that said "change is inevitable, growth is optional".  This is a time to grow and lets do this together.  The afternoon show will continue to feature Doug Christie and I will now join him every day.  In the mornings, Carmichael Dave will lead The Drive along with Jay Marzz.  Please feel free to reach out with any questions, thank you.

**Jason Ross**
**Sports 1140 KHTK**
**Program Director**
**Office: (916) 923-6882**
**Cell: (916) 804-9900**

