1

Matthew J. Ruggles (SBN 173052)
**RUGGLES LAW FIRM**
7940 California Avenue
Fair Oaks, CA 95628
Tel: (916) 758-8058
Fax: (916) 758-8048
mruggles@ruggleslawfirm.com

Attorney for Plaintiff
GRANT NAPEAR

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

12 | GRANT NAPEAR,

Case No. 2:21-cv-01956-DAD-DB

13 |                    Plaintiff,

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

vs.

14

15 | BONNEVILLE INTERNATIONAL CORPORATION, a Utah corporation; and DOES 1 through 50, inclusive,

16

17

**Date: July 18, 2023**
**Time: 1:30 p.m.**
**Courtroom: 4, 15th Floor**
**Judge: Hon. Dale A. Drodz**

18 |                    Defendants.

19

20

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION………………………………………………….…………..1

II.  LEGAL STANDARD……………………………………………….…………1

III. LEGAL ARGUMENT…………………………………………………………2

    A.  PLAINTIFF'S SECOND CAUSE OF ACTION PLAUSIBLY ALLEGES
       A CLAIM FOR DISCRIMINATION IN VIOLATION OF THE FEHA………………2

       1.  Defendant's Argument is Based Almost Entirely on Summary
          Judgment Cases, Not Pleading Cases…………………………………..………2

       2.  The Phrase "All Lives Matter" is a Self-Evident Expression of
          Plaintiff's Religious Beliefs………………………………………...……….8

       3.  Plaintiff Is Entitled To Allege His May 31,2020 Public Expression
          Was Both Religious and Political……………………………………………9

    B.  THE SECOND AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT
       PLAINTIFF WAS TERMINATED BECAUSE OF HIS EXPRESSION OF HIS
       POLICITAL BELIEF…………………………………………………………11

       1.  Plaintiff's Third Cause of Action Sufficiently Alleges That Defendant Had
          An Implicit Rule, Regulation or Policy Prohibiting Public Expression
          Potentially Offensive to the Black Lives Matter Movement………………………..11

       2.  Plaintiff Expressly Alleges That His Public Message that "ALL LIVES
          MATTER…EVERY SINGLE ONE" Was A Political Statement…………………14

       3.  Plaintiff Alleges Specific Facts That Plausibly Allege That Defendant
          Terminated Plaintiff Because of His Political Expression…………………………15

    C.  PLAINTIFF'S FIRST CAUSE OF ACTION SHOULD NOT BE DISMISSED
       IF EITHER OF THE REMAINING TWO CLAIMS PASS MUSTER…………….……18

    D.  IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO
       AMEND THE SECOND AMENDED COMPLAINT…………………..………18

IV. CONCLUSION……………………………………….…………………………19

1

## TABLE OF AUTHORITIES

2

**Cases**

3

Ali v. L.A. Focus Pub.,

4
112 Cal. App. 4th 1477 (2003), ................................................................ 19

5
Ali v. Silicon Valley Bank,

6
No. C 18-03999 JSW, 2019 WL 8752054 (N.D. Cal. Jan. 28, 2019)............................................ 8

7
Ashcroft v. Iqbal,

8
556 U.S. 662, 678-79 ................................................................ 1

9
Avila v. Continental Airlines, Inc.,

10
165 Cal. App. 4th 1237 (2008) ................................................................ 7

11
Bell Atlantic v. Twombly,

12
550 U.S. 544, 570 (2007)................................................................ 1

13
Brazill v. California Northstate College of Pharm., LLC,

904 F. Supp. 2d 1047 (E.D. Cal. 2012 ................................................................ 11, 16

14

15
Cruz v. Beto,
405 U.S. 319, 322 (1972)................................................................ 1

16

17
Eclectic Properties East, LLC v. Marcus & Millichap Co.,
751 F.3d 990, 996 (9th Cir. 2014) ................................................................ 18

18

19
Friedman v. Southern Cal. Permanente Medical Group,
102 Cal.App.4th 39, 70 (2002) ................................................................ 7

20

21
Greer v. Lockheed Martin Corp.,
855 F. Supp. 2d 979 (N.D. Cal. 2012) ................................................................ 4

22

23
Gross v. FBL Financial Services, Inc.,
557 U.S. 167, 129 S.Ct. 2343 (2009),................................................................ 11

24

25
Lamb v. Household Credit Services,
956 F. Supp. 1511 (N.D. Cal. 1997) ................................................................ 7

26
Lawler v. Montblanc North America, LLC,

27
704 F.3d 1235 (9th Cir. 2013) ................................................................ 5

28

<u>Lewis v. United Parcel Serv., Inc.</u>,
252 F. App'x 806, 807-808 (9th Cir. 2007) ........................................................ 6

<u>Lopez v. Smith</u>,
203 F.3d 1122, 1130 (9th Cir. 2000) .............................................................. 21

<u>Nava v. Safeway Inc.</u>, 2013 WL 3961328, at *8 (Cal. Ct. App. Apr. 26, 2006) ......................... 13

<u>PAE Government Services, Inc. v. MPRI, Inc.</u>, 514 F.3d 856, 858 (9th Cir. 2007), ............ 11, 15

<u>Perez v. Vitas Corp. of Cal.</u>,
No. CV 16-1681 DSF (AJWx) 2017 WL 5973294 (C.D. Cal. March 29, 2017) ......................... 4

<u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>,
373 U.S. 746, 753 n.6 (1963) ........................................................................... 1

<u>Scheuer v. Rhodes</u>,
416 U.S. 232, 236, 94 S. Ct. 1683 ...................................................................... 2

<u>Shirley v. Univ. of Idaho</u>, 800 F.3d 1193 (9th Cir. 2015), .................................... 12, 16

<u>Surdak v. DXC Tech.</u>,
No. 5:22-cv-00921-SB-KK, 2022 WL 18142545, at *7 (C.D. Cal. Dec. 20, 2022)( ................... 13

<u>Swierkiewicz v. Sorema N.A</u>
<u>534 U.S. 506 (2002)</u>................................................................... 2, 5, 6, 8, 9

<u>Wilson v. Cable News Network, Inc.</u>, 7 Cal. 5th 871 (2019) ..................................... 6

## I.   **INTRODUCTION**

Plaintiff GRANT NAPEAR submits the following Memorandum of Points and Authorities in Opposition to Defendant BONNEVILLE INTERNATIONAL CORPORATION's Motion to Dismiss the Second Amended Complaint. [Docket No. 56]

## II.   **LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  Navarro v. Block, 350 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss, the factual allegations of the complaint are assumed to be true. Cruz v. Beto, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts" beyond those necessary to state his claim and the grounds showing entitlement to relief." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007) (*citing* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2009)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (citing Twombly, 550 U.S. at 556). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, (a well-pleaded complaint may proceed even if it appears "that a recovery is very

remote and unlikely").  Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III.   LEGAL ARGUMENT

**A. PLAINTIFF'S SECOND CAUSE OF ACTION PLAUSIBLY ALLEGES A CLAIM FOR DISCRIMINATION IN VIOLATION OF THE FEHA.**

1. Defendant's Argument is Based Almost Entirely on Summary Judgment Cases, Not Pleading Cases.

In response to the District Court's order granting Defendant's Motion to Dismiss the First Amended Complaint, Plaintiff GRANT NAPEAR made substantial revisions to the Second Cause of Action for Discrimination in Violation of the California Fair Employment and Housing Act ("FEHA") Based on Religion.  One of the important revisions Plaintiff made was in response to Defendant's inaccurate assertion that Plaintiff purportedly "admitted" in the First Amended Complaint that he "always kept his religion and political beliefs to himself. . . ."  [See Def. MPA iso Motion to Dismiss, p.4:11, Docket No. 56]  In order to make its argument, Defendant intentionally misconstrues that allegation in the Motion to Dismiss the First Amended Complaint (as well as in the current motion) because Defendant fails to acknowledge that Plaintiff actually alleged that Plaintiff "always kept his religious and political beliefs to himself during radio broadcasts." [See FAC, ¶ 27, p.7:20-24 and SAC, ¶ 28, p.8:13-14 (underline added)]  Although Plaintiff did not comment on whether he discussed his religious beliefs when he was not conducting a radio broadcast in the First Amended Complaint, Plaintiff cured that defect in the

Second Amended Complaint by alleging the facts set forth in paragraph 29 of the Second Amended Complaint.

Paragraph 29 of the Second Amended Complaint sets forth additional facts that plausibly allege that employees of Defendant BONNEVILLE INTERNATIONAL CORPORATION knew Plaintiff's religion and that he was a religious person because, when he was not conducting a radio broadcast, Plaintiff "periodically spoke with his co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION about his religion and his faith in God, as well as how Plaintiff was raised by his family, including the religious values and beliefs that were instilled in Plaintiff from his parents beginning as a child." [SAC, ¶ 29, p.8:16-20]  Additionally, paragraph 29 alleges that "Plaintiff was open about his religious beliefs and discussed the topic at work," and that "Plaintiff often attended religious services on Sundays, and discussed this fact with his co-workers at Defendant." [SAC, ¶ 29, p.8:22-27]   Although Plaintiff alleges that he can specifically recall speaking with Mike Lamb and Doug Christie about his religion, Plaintiff's allegations are not limited to those two individuals because "Plaintiff believes that he discussed the subject with other co-workers that he cannot specifically recall." [SAC, ¶ 29, pp.8:27-9:1] As alleged in paragraph 14 of the Second Amended Complaint, Plaintiff GRANT NAPEAR worked at KHTK 1140 AM for decades, and worked for Defendant BONNEVILLE INTERNATIONAL CORPORATION since 2018.  [SAC, ¶ 16]  Based on those factual allegations, it is reasonable and plausible to infer that Plaintiff's supervisor and other members of management knew Plaintiff's religion and that he was a religious person, just like any co-worker learns of personal facts about his or her co-workers after working together for a substantial amount of time.

Despite these additional factual allegations, Defendant contends the allegations in the Second Amended Complaint are insufficient based on its overstated argument that "a plaintiff **must allege**, and eventually show, that a person with actual influence or authority over employment decisions knew about the employee's religious beliefs (or other protected characteristics) at the time of the adverse employment action." [Def. MPA, p.9:21-28 (underline and emphasis added)]

In fact, neither one of the cases relied upon by Defendant for this alleged pleading requirement includes or mentions any such requirement at the pleading stage, and Defense Counsel's citation of two cases for that absent proposition is totally improper.  Instead, as explained in both Perez v. Vitas Corp. of Cal., No. CV 16-1681 DSF (AJWx) 2017 WL 5973294 (C.D. Cal. March 29, 2017) and in Greer v. Lockheed Martin Corp., 855 F. Supp. 2d 979 (N.D. Cal. 2012), the requirement to provide evidence of a decision-maker's knowledge of the alleged protected characteristic is *only* a requirement to defeat a Motion for Summary Judgment, not a Motion to Dismiss under Rule 12(b)(6).  Neither case ruled directly or indirectly that a Plaintiff must allege "that a person with actual influence or authority over employment decisions knew about the employee's religious beliefs (or other protected characteristics) at the time of the adverse employment action."  Simply put, Defendant's argument that a plaintiff must plead specific facts demonstrating the decision-maker's knowledge of the protected characteristic to properly allege a claim for discrimination under the FEHA is not directly supported by any of the cases that Defendant relies upon.

Not surprisingly, nearly all of the subsequent cases cited in Section V.A(1) of Defendant's moving brief are cases that were dismissed in response to a motion for summary judgment, not a Rule 12(b)(6) motion to dismiss.  Because the summary judgment standard is higher than the

pleading standard under Rule 8, summary judgment cases do not lend support for Defendant's inflated argument.  Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2009).

Furthermore, except for one case (Ali v. Silicon Valley Bank), none of the other cases cited in Section V.A(1)(pp.8:12-10:23) of Defendant's moving brief provide any applicable guidance on the pleading standard under the FEHA:

(a)    Lawler v. Montblanc North America, LLC, 704 F.3d 1235 (9th Cir. 2013) is a summary judgment case that expressly applied the McDonnel Douglas burden shifting analysis to defeat plaintiff's claims, and therefore is inapposite to the pleading standard under Rule 8 pursuant to Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002);

(b)    Wilson v. Cable News Network, Inc., 7 Cal. 5th 871 (2019) involved the California Supreme Court's application of California Code of Civil Procedure section 425.16, California's "anti-SLAPP" statute, to claims of discrimination and retaliation.  Id. at 881 ("The primary question before us concerns the statute's application to employment discrimination and retaliation claims.") The Wilson case does not discuss or consider the pleading standard for a claim for discrimination based on religion under the FEHA.  It simply doesn't have any application to the issues presented by Defendant's motion;

(c)    Lewis v. United Parcel Serv., Inc., 252 F. App'x 806, 807-808 (9th Cir. 2007) ruled that the defendant's motion for summary judgment was proper because the plaintiff failed to prove he suffered an "adverse employment action," and does not mention, discuss or rule on any pleading issue.  Like the Wilson case, it doesn't provide any useful guidance or precedent.

(d)    Friedman v. Southern Cal. Permanente Medical Group, 102 Cal.App.4th 39, 70 (2002) ruled that Defendant's demurrer properly was sustained without leave to amend because

"veganism" is not a religion as a matter of law, not because the decision-maker didn't know plaintiff was a vegan;

(e)     <u>Lamb v. Household Credit Services</u>, 956 F. Supp. 1511 (N.D. Cal. 1997) also is a summary judgment case where plaintiff failed to demonstrate that a "management level employee" knew or should have known of the alleged misconduct that resulted in a "hostile work environment." <u>Id</u>. at 1518. <u>Lamb</u> is not a pleading case and doesn't involve a religious discrimination claim; and

(f)     <u>Avila v. Continental Airlines, Inc</u>., 165 Cal. App. 4th 1237 (2008) ruled the defendant's motion for summary judgment was proper because, in part, "in his response to Continental's separate statement of undisputed facts, plaintiff did not assert that the evidence raised a triable issue that Bellamy and Johnson knew that plaintiff was disabled — rather, plaintiff asserted that his evidence established that 'Johnson and Bellamy knew Plaintiff was sick." <u>Id</u>. at 1249.  Simply put, the <u>Avila</u> case ruled that the plaintiff's claim could not meet the evidentiary standard required by <u>McDonnell Douglas</u> burden shifting analysis, not because the plaintiff failed to allege a plausible claim for disability discrimination.  Under <u>Swierkiewicz v. Sorema N.A</u>., the <u>Avila</u> case is inapposite because it is not a pleading case.

Pursuant to the U.S. Supreme Court's ruling in <u>Swierkiewicz v. Sorema N.A</u>., 534 U.S. 506 (2002), application of summary judgment cases that expressly rule on the <u>McDonnell Douglas</u> burden shifting analysis are inapplicable under the Rule 12 analysis, and Defendant's extensive reliance on such cases is entirely misplaced.

The single (unpublished) case that Defendant cites in Section V.A(1) of Defendant's Motion to Dismiss that has any discussion on the pleading standard for a FEHA-based claim is <u>Ali v. Silicon Valley Bank</u>, No. C 18-03999 JSW, 2019 WL 8752054 (N.D. Cal. Jan. 28, 2019).

[*See* Def. MPA, p.9:1-2]  However, the <u>Ali</u> case is distinguishable on both the facts and the law. First, the <u>Ali</u> case involved an alleged failure to hire, not a termination, and therefore has different elements.  Unlike the plaintiff in <u>Ali</u>, Plaintiff GRANT NAPEAR worked for KHTK 1140AM for decades, and worked for Defendant BONNEVILLE INTERNATIONAL CORPORATION since 2018. [SAC, ¶¶ 14 and 16]  Unlike the plaintiff in <u>Ali</u>, Plaintiff GRANT NAPEAR alleges the facts in paragraph 29 of the Second Amended Complaint that plausibly allege that Plaintiff's co-workers at Defendant BONNEVILLE INTERNATIONAL CORPORATION (and at KHTK 1140AM in particular) knew that Plaintiff was a Unitarian and that he was a religious person based on his off-the-air discussions about his religion, etc., with his co-workers.  As stated above, it is reasonable and plausible to infer that based on the facts alleged in Second Amended Complaint, management of Defendant had knowledge of Plaintiff's religion.

Of course, requiring a plaintiff to allege the very particular facts about "what did the decision makers know and when did they know it" would defeat most, if not all, claims under the FEHA because at the outset of the lawsuit, the plaintiff often is unaware of everyone that was involved in the adverse employment decision, what information was gathered or considered by the employer prior to the adverse employment action, and what facts actually motivated the termination decision.  Instead, that is exactly the issue that "liberal discovery rules and summary judgment motions" are designed to address because, as the U.S. Supreme Court explained, "[i]t may be difficult to define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence. Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 507 (2002).

Because Defendant's motion advocates for application of the summary judgment standard to it's Rule 12(b)(6) motion, it must be denied as to Plaintiff's Second Cause of Action.

    2.  <u>The Phrase "All Lives Matter" is a Self-Evident Expression of Plaintiff's Religious Beliefs.</u>

Defendant's argument that Plaintiff's public expression that "ALL LIVES MATTER...EVERY SINGLE ONE" is not a self-evident expression of Plaintiff's religious belief appears to contradict itself. First, Defendant concedes that "the worth of every human life" is a universal religious principle (according to Defendant, "almost every other faith" espouses the same thing.) [See Def. MPA, p.11:1-2] In the very next sentence, Defendant claims that no one could have possibly understood it as such. That doesn't make sense and contradicts Defendant's concession that the phrase represents an expression of a universal religious belief.

Defendant's additional argument that the phrase "ALL LIVES MATTER...EVERY SINGLE ONE" was not self-evidently an expression of Plaintiff's religion because it does not "quote from scripture or contain any other moniker connecting it to a particular religion" is incorrect and unsupported by any legal authority. As alleged in paragraph 55 of the Second Amended Complaint, Plaintiff expressly alleges that:

> Plaintiff GRANT NAPEAR's public message that "ALL LIVES MATTER...EVERY SINGLE ONE" was a personal expression of Plaintiff GRANT NAPEAR'S sincerely held Christian religious belief regarding the inherent worth and dignity of every single living person because all people are created in the image of God, and as reflected by the First Principle of the Unitarian Church. From Plaintiff GRANT NAPEAR'S perspective as a Christian, the message "ALL LIVES MATTER...EVERY SINGLE ONE" reflects the Christian religious belief that all human beings are made in the image of God and therefore have inherent value and worth. This belief is rooted in the Bible, which teaches that God created human beings in his own image (Genesis 1:27) and that every human life is precious to God (Psalm 139:13-16).

As these factual allegations demonstrate, Plaintiff's public expression on May 31, 2020 for which Defendant terminated his employment was an expression based on scripture, including the Bible and the First Principle of the Unitarian Church.

Defendant's argument that Plaintiff's allegation that "members of the public also recognized the religious nature and religious principles" reflected in Plaintiff's public message that "ALL LIVES MATTER…EVERY SINGLE ONE" is "speculative" ignores the facts alleged in paragraph 56 of the Second Amended Complaint which expressly are "evidenced by numerous written comments, emails and letters received by the Sacramento Kings and by Defendant BONNEVILLE INTERNATIONAL CORPORATION." How is that speculation? It isn't, and Plaintiff can prove it at the appropriate stage of the litigation.

3. Plaintiff Is Entitled To Allege His May 31,2020 Public Expression Was Both Religious and Political.

The United States Court of Appeals for the Ninth Circuit has consistently ruled that a plaintiff is allowed to plead alternative theories or claims, even if they are inconsistent. This is in accordance with Federal Rule of Civil Procedure 8(d)(3), which expressly permits it: "A party may state as many separate claims or defenses as it has, regardless of consistency."

Several cases from the Ninth Circuit and district courts within the Ninth Circuit directly address the question of whether a plaintiff can allege inconsistent facts or theories in a complaint. In PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856, 858 (9th Cir. 2007), the Ninth Circuit ruled that inconsistent allegations in an amended complaint are not necessarily a "sham." The court also noted that the rules allow for pleadings in the alternative, even if the alternatives are mutually exclusive. Id. at 859.

Similarly, in <u>Brazill v. California Northstate College of Pharm., LLC</u>, 904 F. Supp. 2d 1047 (E.D. Cal. 2012), the Eastern District of California ruled that the Supreme Court's decision in <u>Gross v. FBL Financial Services, Inc</u>., 557 U.S. 167, 129 S.Ct. 2343 (2009), does not preclude a plaintiff from pleading alternate theories for an adverse employment action. The court cited Federal Rules of Civil Procedure 8(d)(2) and (3), which allow for the pleading of multiple and inconsistent claims. <u>Id</u>. at 1051.

Likewise, in <u>Shirley v. Univ. of Idaho</u>, 800 F.3d 1193 (9th Cir. 2015), the Ninth Circuit ruled that inconsistency between a current complaint and an earlier one is not a basis for dismissal, and that there is "nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." <u>Id</u>. at 1195.

In this case, Defendant makes the incorrect argument that the District Court may disregard Plaintiff's allegation that his May 31, 2020 public expression that "ALL LIVES MATTER…EVERY SINGLE ONE" was religious in nature because Plaintiff also alleges that phrase was Plaintiff's "personal expression of [his] political opinion and ideology."  Not true. Pursuant to Rule 8(d)(3), Plaintiff is entitled to do so and the District Court cannot grant Defendant's motion to dismiss on that basis.  Even so, Plaintiff contends that the allegations do not contradict one another because many political issues directly implicate religious issues – the decades-long national debate on abortion and same-sex marriage are just a few prime examples.

///

///

///

**B. THE SECOND AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT PLAINTIFF WAS TERMINATED BECAUSE OF HIS EXPRESSION OF HIS POLICITAL BELIEF.**

1. Plaintiff's Third Cause of Action Sufficiently Alleges That Defendant Had An Implicit Rule, Regulation or Policy Prohibiting Public Expression Potentially Offensive to the Black Lives Matter Movement.

As explained in footnote 5 of the District Court's April 20, 2023 order granting Defendant's Motion to Dismiss the First Amended Complaint, the law does not require a plaintiff to always identify a particular policy, rule or regulation when stating a claim under Labor Code section 1101. Instead, as noted by the Court, Plaintiff's termination may be viewed as a warning or threat to other employees that certain political activities or viewpoints would not be tolerated by defendant, and plaintiff's termination may be considered a declaration of a particular policy regarding the Black Lives Matter movement by defendant. *See* Surdak v. DXC Tech., No. 5:22-cv-00921-SB-KK, 2022 WL 18142545, at *7 (C.D. Cal. Dec. 20, 2022)(finding that "a reasonable jury could conclude that [the employer] disagreed with the political views expressed in or suggested by the tweet [concerning Lyndon Baines Johnson] and wanted to punish Plaintiff for, or discourage other employees from, expressing similar speech"); Nava v. Safeway Inc., 2013 WL 3961328, at *8 (Cal. Ct. App. Apr. 26, 2006)(unpublished)(explaining that if plaintiff alleged that he "was fired for his particular political perspective . . . [of] being against same-sex marriage . . . it may be inferred that . . . [the employer] was in effect declaring that the espousal or advocacy of such political views will not be tolerated—then [the employer's] action constituted a violation of Labor Code sections 1101 and 1102").

That is precisely what Plaintiff alleges in Third Cause of Action in the Second Amended Complaint, and specifically in paragraph 69. Moreover, the allegations in paragraph 69 are not speculation or mere conclusions because Plaintiff expressly alleges that "several employees of

Defendant BONNEVILLE INTERNATIONAL CORPORATION made internal complaints based on that specific concern to the Company in direct response to Defendant's public message terminating Plaintiff GRANT NAPEAR'S employment."  [*See* SAC, ¶ 69, p.23:13-17]   Put differently, Plaintiff alleges that his termination was an implicit threat to other employees because other employees actually felt threatened.  That is not speculation, conjecture or mere conclusions – it's specific facts that plausibly allege an implicit rule, regulation or policy that violates Labor Code section 1101.

Defendant also raises the issue identified in Plaintiff's Motion to Amend the Second Amended Complaint [Docket No. 52]: the July 2020 policy issued by Defendant concerning employees' public support for BLM and other organizations.  However, Defendant does not explain how a policy first announced and issued in July 2020 (approximately 2 months *after* Plaintiff's termination) "proves" that Defendant didn't make a contrary decision when it came to Plaintiff's May 31, 2020 public expression of his political beliefs.  More importantly, Defendant does not even mention the allegations set forth in paragraphs 65 and 66 which demonstrate why, on May 31, 2020 and the days that immediately followed, Defendant BONNEVILLE INTERNATIONAL CORPORATION was particularly concerned that making any public statement that purportedly was "anti-BLM" might arouse political protestors in Sacramento to focus on KHTK 1140AM.  Once again, that allegation is not speculation because it is confirmed by Exhibit A to the Second Amended Complaint, which expressly mentions threats to "burn down" the KHTK 1140AM facility in Sacramento.  Considering the fact that many other businesses, shops, and other public and commercial properties were damaged and/or destroyed during the "mostly peaceful" riots following George Floyd's death, it is reasonable and plausible to infer that Defendant BONNEVILLE INTERNATIONAL CORPORATION terminated

Plaintiff GRANT NAPEAR because of his political message that "ALL LIVES MATTER…EVERY SINGLE ONE" because of the context in which it was made.  To be sure, Plaintiff expressly alleges that Defendant BONNEVILLE INTERNATIONAL CORPORATION found Plaintiff's May 31, 2020 public message to be "politically incorrect" "because Plaintiff's public message purportedly conveyed to some an objectionable political message that allegedly was inconsistent with the Black Lives Matter political movement and slogan because, according to Defendant BONNEVILLE INTERNATIONAL CORPORATION, it dismissed the concerns that many members of the Black community and others had about George Floyd's death, allegedly refocused the issue away from questions about racial discrimination, and purportedly diminished the unique challenges faced by the Black community more generally." [*See* SAC, ¶ 64]  Once again, Plaintiff's allegation in paragraph 64 is not speculation – that is a fact that Defendant simply does not dispute.

As discussed above, the fact that Plaintiff revised certain allegations in the Second Amended Complaint that purportedly "contradict" Plaintiff's former allegations in the First Amended Complaint is not a sufficient basis for the District Court to grant Defendant's motion to dismiss. *See* PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856, 858 (9th Cir. 2007); Brazill v. California Northstate College of Pharm., LLC, 904 F. Supp. 2d 1047 (E.D. Cal. 2012); Shirley v. Univ. of Idaho, 800 F.3d 1193 (9th Cir. 2015).

In the end, Defendant's July 2020 policy does not save the day for Defendant BONNEVILLE INTERNATIONAL CORPORATION because it does not contradict the well-pleaded allegations supporting Plaintiff Third Cause of Action about how and why Defendant made the decision to terminate Plaintiff GRANT NAPEAR on June 2, 2020.

2. <u>Plaintiff Expressly Alleges That His Public Message that "ALL LIVES MATTER…EVERY SINGLE ONE" Was A Political Statement.</u>

Defendant's argument that Plaintiff purportedly "disavowed" the political nature of his May 31, 2020 public expression that "ALL LIVES MATTER…EVERY SINGLE ONE" because of the allegations in paragraph 63 makes little sense.  First, the Court should note that Plaintiff <u>expressly</u> <u>alleges</u> in paragraph 63 that his May 31, 2020 public message was "a personal expression of Plaintiff GRANT NAPEAR'S **political opinion and ideology** that all persons are created and remain equal under the law regardless of race, gender, religion, national origin, political affiliation, or any other basis" and expressed "Plaintiff's **political messages** that civil and criminal rights should apply equally to all persons, regardless of race." (emphasis added.)

Contrary to Defendant's allegations in its moving papers, Plaintiff does <u>not</u> allege in paragraph 63 the Second Amended Complaint that "the Tweet did not espouse a particular view on the Black Lives Matter movement. . . ." [*See* Def. MPA, p.15:21-24]  To the contrary, Plaintiff expressly alleges at the end of paragraph 63 that "[b]y publicly expressing the phrase 'ALL LIVES MATTER…EVERY SINGLE ONE' in response to the political question 'What's you take on BLM?,' Plaintiff GRANT NAPEAR was expressing that political message and ideology and encouraging other members of society to adopt and follow a *more inclusive political belief and point of view compared to the less inclusive political message of the Black Lives Matter political movement.*" [SAC, ⁋ 63, p.19:17-24 (italics added)]

Furthermore, Plaintiff alleges sufficient facts to plausibly claim that Defendant BONNEVILLE INTERNATIONAL CORPORATION interpreted Plaintiff's May 31, 2020 public expression that "ALL LIVES MATTER…EVERY SINGLE ONE" to be "anti-BLM" based on the fact that Defendant BONNEVILLE INTERNATIONAL CORPORATION

expressly (and publicly) terminated Plaintiff's employment because "his recent comments about the Black Lives Matter movement do not reflect the views and values of Bonneville International Corporation" [SAC, ⁋ 38] because "it dismissed the concerns that many members of the Black community and others had about George Floyd's death, allegedly refocused the issue away from questions about racial discrimination, and purportedly diminished the unique challenges faced by the Black community more generally." [SAC, ⁋ 64] The fact that Plaintiff was not "anti-BLM" and that his May 31, 2020 message was intended to be "inclusive of Black Lives Matter" does not change the analysis at all because the focus of a claim under Labor Code section 1101 and 1102 is the motivation of Defendant BONNEVILLE INTERNATIONAL CORPORATION in the termination decision, and Plaintiff includes sufficient facts in the Second Amended Complaint to reasonably and plausibly allege that termination of his employment was substantially motivated by illegal political animus.

3.  <u>Plaintiff Alleges Specific Facts That Plausibly Allege That Defendant Terminated Plaintiff Because of His Political Expression.</u>

Defendant's argument that Plaintiff fails to sufficiently allege that Bonneville's motive in terminating him was political ignores the allegations in the Second Amended Complaint and incorrectly asserts that the District Court is obligated to accept Defendant's so-called "apolitical reason" for Plaintiff's termination.

First, Plaintiff alleges that the reason Defendant publicly and privately offered for his termination is a pretext for illegal discrimination in violation of the California Fair Employment and Housing Act and the California Labor Code. [SAC, ⁋⁋ 45 and 54] And as noted by the District Court in the April 20, 2023 Order Granting Defendant's Motion to Dismiss the First Amended Complaint, Plaintiff has alleged specific facts asserting that Defendant's stated reasons

for termination (*i.e.* a contract violation and Kings' team vote) are false.  [*See* SAC, ¶¶ 39-40 and 44-45.]    Furthermore, contrary to Defendant's argument, the facts alleged in the Second Amended Complaint tend to exclude the proffered reason because Plaintiff alleges the reason is false based on specific factual allegations, not just conclusions, speculation, etc.  *See* Eclectic Properties East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014)("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.")

Defendant's motion also completely ignores the new factual allegation in paragraph 65 of the Second Amended Complaint regarding Steve Cottingim's deposition testimony in this lawsuit.  As alleged in paragraph 65:

> STEVE COTTINGIM, the Senior Vice President / Market Manager for Bonneville Sacramento, who was directly involved in Plaintiff's termination, testified at his deposition that the phrase "ALL LIVES MATTER" is inappropriate only in the context of a direct response to the specific question "Do you support Black Lives Matter." In other words, according to Defendant BONNEVILLE INTERNATIONAL CORPORATION'S Senior Vice President in Sacramento, the phrase "ALL LIVES MATTER" is only inappropriate in the context of the public political exchange that happened on May 31, 2020 between Demarcus Cousins and Plaintiff GRANT NAPEAR.

Plaintiff contends that Mr. Cottingim's admission at his deposition supports the reasonable and plausible inference that because the public exchange between Plaintiff and Demarcus Cousins was self-evidently political in nature, terminating Plaintiff based on the specific context of the exchange infers that the termination decision was based on political considerations.  That same evidence demonstrates why Defendant's so-called "apolitical reason" for terminating Plaintiff was nothing of the sort: the "discredit" to Bonneville's "good name, goodwill or reputation" was

the alleged adverse political fallout (the so-called "firestorm of tweets on Twitter) that purportedly made Defendant appear "politically incorrect" or "anti-BLM" because Defendant employed Plaintiff.  Simply put, Defendant's enforcement of the employment contract does not automatically trump California law; Defendant cannot take action under the guise of the employment contract if the proposed action would violate California law.

The case of <u>Ali v. L.A. Focus Pub</u>., 112 Cal. App. 4th 1477 (2003), *disapproved of on other grounds*, <u>Reid v. Google, Inc</u>., 50 Cal.4th 512 (2010), is instructive regarding the distinction between a permissible termination and a violation of Labor Code section 1101 and 1102.  In <u>Ali</u>, the plaintiff, a writer for the defendant-newspaper, was terminated approximately one week after he criticized a Congresswoman on public radio for her support of a particular political candidate. <u>Id</u>. at 1481.  The plaintiff sued the newspaper for wrongful termination in violation of public policy, among other things. <u>Id</u>. The trial court granted the newspaper's motion for summary judgment in which the newspaper argued, among other things, that "it was entitled to terminate its relationship with [the plaintiff] for speaking in a manner that contravened the editorial policy of the paper and, therefore, [the plaintiff] failed to set forth any public policy violated by his discharge." <u>Id</u>. at 1483, 1486-87.

The Court of Appeal reversed. <u>Id</u>. at 1486. The court rejected the newspaper's suggestion that "it ha[d] the unfettered right to terminate an employee for any speech or conduct that is inconsistent with [its] editorial policies." <u>Id</u>. at 1488. The court explained that Labor Code section 1101 reflects California's "public policy prohibiting employers from terminating an employee for engaging in political activity." <u>Id</u>. at 1487. The court then went on to explain that, contrary to the newspaper's characterization of his claim, the plaintiff "assert[ed] he was fired not because the content of his articles contravened the editorial  policies or standards of the newspaper, but

because outside of the workplace he publicly criticized an influential public official for supporting a particular political candidate." Id. In the court's view, the plaintiff "submitted sufficient evidence of a public policy violation to survive a motion for summary judgment." Id.

Like the plaintiff in Ali, Plaintiff GRANT NAPEAR alleges that the termination of his employment was political, even if it allegedly contravened an employer policy or contractual provision.  Because Plaintiff also alleges significant facts plausibly asserting that Defendant's stated reasons for termination are false, Plaintiff has successfully crossed the line from possible to plausible, and Defendant's Motion to Dismiss the Third Cause of Action in the Second Amended Complaint should be denied.

## C. PLAINTIFF'S FIRST CAUSE OF ACTION SHOULD NOT BE DISMISSED IF EITHER OF THE REMAINING TWO CLAIMS PASS MUSTER.

Because Plaintiff's First Cause of Action for Wrongful Termination in Violation of Public Policy expressly is based upon the Second and Third Causes of Action alleged in the Second Amended Complaint, Plaintiff's First Cause of Action should not be dismissed if either the Second Cause of Action or the Third Cause of Action pass muster under the Court's analysis.

## D. IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND THE SECOND AMENDED COMPLAINT.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995)).

In the event that the Court grants any portion of Defendant BONNEVILLE INTERNATIONAL CORPORATION's motion to dismiss, Plaintiff GRANT NAPEAR respectfully requests leave to amend.

## IV.    **CONCLUSION**

Plaintiff GRANT NAPEAR requests that the District Court issue an order denying Defendant BONNEVILLE INTERNATIONAL CORPORATION'S Motion to Dismiss the Second Amended Complaint.   If any portion of the Motion is granted, Plaintiff GRANT NAPEAR requests leave to amend.

DATED:  June 15, 2023                    RUGGLES LAW FIRM

By:  /s/ Matthew J. Ruggles
        MATTHEW J. RUGGLES
        Attorney for Plaintiff
        GRANT NAPEAR